Mason G. **GLAZIER**, Appellant (Defendant),

v.

The **STATE** of Wyoming, Appellee (Plaintiff).

No. 92–49.

Supreme Court of Wyoming.

Dec. 22, 1992.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, argued, Defender Aid Program, Julia M. Houser, Student Intern., for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Charles T. Solomon, argued, Student Intern., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT and GOLDEN, JJ.

CARDINE, Justice.

Appellant seeks review of his conviction for aggravated vehicular homicide under W.S. 6-2-106(b). He contends that the evidence was not sufficient to convict and that causation was not proven. He also argues that the statutory presumption that a person with a blood alcohol content of .10 percent is impaired, is an impermissible mandatory presumption.

We affirm.

Appellant raises the following issues:

I. Whether the trial court's decision must be reversed based on insufficiency of the evidence.

 A. Whether the injuries sustained by both Mr. Glazier and Ms. Davis are consistent with Ms. Davis being the driver of the motorcycle.

 B. Whether the positions where Mr. Glazier and Ms. Davis landed prove that Ms. Davis was the driver of the motorcycle.

 C. Whether Mr. Glazier's recanted admissions that he was the driver of the motorcycle provide conclusive evidence that he actually was the driver.

II. Whether, if it is found that Mr. Glazier was the driver at the time of the accident, his actions were the proximate cause of Ms. Davis' death.

III. Whether the conviction must be reversed because the statute establishes an impermissible mandatory presumption that the defendant was incapable of safely driving because he had an alcohol concentration of 0.10% or more.

On May 18, 1991, Mason Glazier (appellant) and his companion, Sunni Davis, were on a "poker run." A "poker run" is an activity in which a participant pays an admission fee and then makes five predetermined stops along a predetermined route and obtains a card at each stop. When all have arrived at the final destination, the person with the best hand wins. Appellant

and Davis were riding the poker run intending to rendezvous with the rest of their group in Story, Wyoming, where, at the conclusion of the poker run, there was to be a weekend party.

Appellant and Davis left Casper on appellant's Harley Davidson motorcycle at about 12:30 in the afternoon. Their first stop was at the Hole in the Wall Bar in Kaycee where they stayed about 45 minutes. Their next stop was the Buffalo Bar in Buffalo, Wyoming where they stayed 45 minutes to an hour. Appellant and his companion consumed alcoholic beverages at these two stops.

At about 5:00 p.m. law enforcement officers and an ambulance were summoned to respond to a one-vehicle accident just east of the I–25 and I–90 interchange near Buffalo, Wyoming. When Patrolman Stauffacher arrived at the scene, he observed a female lying on her stomach with her head facing downhill in a cement drainage ditch. She appeared to be critically injured. Patrolman Stauffacher observed appellant, who was walking and did not appear to be as critically injured. Patrolman Stauffacher asked appellant if he remembered what happened. He responded that they "were pushed wide in the corner." The patrolman also asked if they had been passed by a car or a truck, and appellant replied that he did not know.

The ambulance crew placed the critically injured woman into the ambulance. Two officers escorted appellant to the ambulance as well. Both officers testified that they could smell alcohol on appellant. Later in the evening, Patrolman Stauffacher went to the hospital to complete his accident report. He spoke with appellant again about the cause of the accident. Appellant said that he had been "pushed wide in a turn." The patrolman inquired what had pushed them, and appellant stated he was not sure but it may have been a gust of wind. Patrolman Stauffacher then asked why the brakes were not applied before leaving the roadway. Appellant responded that he was afraid to apply the brakes in lose dirt since he might lose control of the motorcycle and that he be-

lieved he could "ride it out" without applying the brakes. However when he saw they were approaching a deep ravine, he did apply the brakes and lost control of the motorcycle. Appellant also told Patrolman Stauffacher that neither of the riders was wearing a helmet. Since Patrolman Stauffacher had detected the odor of alcohol, he requested that blood be drawn. Appellant's blood alcohol concentration was .17.

One week after the motorcycle wreck in which Sunni Davis sustained severe head injuries, she died. Appellant also sustained severe injuries in the wreck. He was hospitalized for twenty-three days and spent eighteen of those days on the critical list.

A criminal complaint charging appellant with aggravated vehicular homicide was filed May 18, 1991. The complaint alleged that appellant was operating a motorcycle in violation of W.S. 31–5–233, Wyoming's driving under the influence law, and that the violation of law was the proximate cause of a death. Appellant waived his right to a jury trial. The case was tried in a bench trial to the district court. The district court found appellant guilty and sentenced him to a term of five to ten years in the Wyoming State Penitentiary. Timely notice of appeal was filed.

## SUFFICIENCY OF EVIDENCE

Appellant contends that the evidence at trial was insufficient to prove the elements of aggravated vehicular homicide. The Wyoming aggravated vehicular homicide statute, W.S. 6–2–106(b) (1988), provides:

> (b) A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if:
>
> (i) While operating or driving a vehicle in violation of W.S. 10–6–103, 31–5–233 or 41–13–206, he causes the death of another person and the violation is the proximate cause of the death; or
>
> (ii) He operates or drives a vehicle in a reckless manner, and his conduct is the proximate cause of the death of another person.

The complaint charged appellant with driving under the influence in violation of W.S. 31–5–233.

■ In reviewing sufficiency of evidence claims, we apply the following standard of review:

"Our standard for arriving at a determination of the sufficiency of the evidence is to determine whether it is adequate to support a reasonable inference of guilt beyond a reasonable doubt to be drawn by the finder of fact, viewing the evidence in the light most favorable to the State. The test is the same, whether the case was tried to the court or to a jury."

*Longstreth v. State*, 832 P.2d 560, 562 (Wyo.1992) (*quoting Walter v. State*, 811 P.2d 716, 719 (Wyo.1991)).

Appellant's primary argument is that Ms. Davis was driving the motorcycle at the time of the wreck. Appellant testified that while in Buffalo, Ms. Davis asked to drive the motorcycle and, after they left the town traffic in Buffalo, she began driving and was driving when the accident occurred.

■ Appellant criticizes the State's reliance on his admissions that he was the driver of the motorcycle, arguing that admissions do not fill a void in the burden of proof. Appellant cites *Eagan v. State*, 58 Wyo. 167, 198, 128 P.2d 215, 225–26 (1942) for the proposition that if the accused is the sole witness to a crime, his testimony cannot be automatically rejected. While appellant's argument is recognized in *Eagan*, it is also expressly limited by the court. In *Leeper v. State*, we defined the limits by holding that the *Eagan* rule applies only if three conditions are fulfilled: 1) defendant is the sole witness, 2) defendant's testimony is accepted if not improbable or not inconsistent with the facts and circumstances shown, and 3) defendant's credibility has not been impeached. *Leeper v. State*, 589 P.2d 379, 382 (Wyo.1979). *See also, Leitel v. State*, 579 P.2d 421, 424 (Wyo.1978); *Dangel v. State*, 724 P.2d 1145, 1149 (Wyo.1986). In this instance, appellant's testimony was not automatically rejected, rather his version of the events was presented to the court and weighed along with the other evidence presented.

However, appellant's credibility was an issue in that the claim that Ms. Davis was driving was not totally consistent with the facts and circumstances and was impeached on cross-examination. The following question and answer demonstrates the problem with appellant's claim:

Q. [Y]ou know she's suspended [her driver's license], and you let her drive your bike; is that correct?

A. Yes, sir.

In addition to the unlikely scenario that appellant had portrayed, Ms. Davis' mother testified at trial that she had never seen Ms. Davis drive a motorcycle.

Appellant, at different times after the accident, admitted to four different persons that he was the driver of the motorcycle at the time of the wreck. Appellant informed Undersheriff Kozisek, the first officer on the scene, that he was driving the motorcycle at the time of the wreck. He told Patrolman Stauffacher the same thing. He also indicated to the ambulance attendant that he was the driver. After Ms. Davis' funeral, appellant spoke to her mother and told her that he was the driver. Appellant claims that he made the statements about being the driver because he knew that Ms. Davis had a suspended license and was trying to protect her. He claims that he told her mother he was driving in order to prevent Ms. Davis' mother from experiencing more pain.

■ Appellant is correct that his previous admissions, which he now disavows, are not completely dispositive. However it is also true that the prior admissions are evidence which the district court was entitled to accept and weigh together with other evidence and appellant's testimony.

Appellant also argues that the injuries sustained by both himself and Ms. Davis were more consistent with Ms. Davis driving. He states that Ms. Davis had bruising on her left hand and that she did not have external bruises on her back; that appellant had back bruises and multiple broken ribs and a broken shoulder; that because of the placement of the injuries, the argu-

ment goes, Ms. Davis must have been the driver.

Appellant then points to the location of the bodies where he and Ms. Davis landed as evidence that Ms. Davis was driving. He states that Ms. Davis landed farthest from where the motorcycle left the interstate, that she probably was able to hold onto the handlebars and ride out the motorcycle longer than he could. Problematic to appellant's argument is the lack of conclusive evidence of where appellant landed. In his brief appellant admits that Patrolman Stauffacher was unable to determine where he landed, and yet goes on to state that "[t]he evidence is uncontested that Mr. Glazier landed on the hillside, at the top of the ravine."

Appellant also cites a photograph of the wrecked motorcycle at the scene. In that photograph a pair of women's boots are next to the motorcycle. Appellant claims that the proximity of the boots to the motorcycle proves that he was not driving. The location of the boots, however, is not conclusive but is to be considered by the court with all other evidence in determining the question of who was driving at the time of the accident.

Given the inconclusive arguments of appellant, the contradicting admissions, and physical facts of the incident, there was evidence sufficient for the district court to find that appellant was the driver of the motorcycle at the time of the wreck.

## PROXIMATE CAUSE

■ Appellant argues that his conviction is infirm because his actions were not the proximate cause of Ms. Davis' death. In order to prove causation, the State must prove that appellant was incapable of driving safely because he was under the influence and his inability to drive safely caused the death of Ms. Davis. W.S. 6–2–106(b) (1988).

We analyze appellant's driving under the influence under our definition of proximate cause:

Proximate cause means that the accident or injury must be the natural and probable consequence of the act of negligence. *McClellan v. Tottenhoff*, 666 P.2d 408, 414 (Wyo.1983) (*citing Frazier v. Pokorny*, 349 P.2d 324 (Wyo.1960)). *See also Buckles v. State*, 830 P.2d 702, 709 (Wyo.1992) (*quoting* with approval a jury instruction from Kansas containing similar language); *Buckley v. Bell*, 703 P.2d 1089, 1092 (Wyo. 1985); *Allmaras v. Mudge*, 820 P.2d 533, 540 (Wyo.1991). There is no proximate cause unless the driver was driving under the influence to a degree which rendered him incapable of safely operating a vehicle. *Hodgins v. State*, 706 P.2d 655, 657 (Wyo. 1985). *See also Redland v. State*, 766 P.2d 1173, 1174 (Wyo.1989) (must be incapable of driving safely); *Felske v. State*, 706 P.2d 257, 260 (Wyo.1985).

■ In this case, the motorcycle left the highway in broad daylight at a high rate of speed. Appellant was under the influence of alcohol and drugs. This accident resulted. This evidence was sufficient to support the trial court's finding that appellant was incapable of safely driving and that this was the proximate cause of the accident. A reasonable person would foresee that driving a motorcycle while under the influence of impairing substances to such a degree that they are unable to drive safely might cause severe injury or death to themselves or another person.

Appellant claims that Patrolman Stauffacher testified that the driver of the motorcycle did everything he would have done under the circumstances. The claim is too broad. Patrolman Stauffacher did not testify that he would have gotten drunk, used cocaine and then driven a motorcycle. Patrolman Stauffacher merely testified that once the vehicle was off the road, the driver did all one could do.

■ Next, appellant claims that his criminal responsibility is diminished if there was an intervening cause. Appellant argues that the wind and the presence of a ravine next to the highway were both intervening causes substantial enough to eliminate or reduce his criminal responsibility. In order to determine the effect of a

claimed intervening cause, we utilize our definition of an intervening cause:

A defendant is usually relieved of liability by an unforeseeable intervening cause. However, an intervening cause does not relieve an earlier actor of liability if it was reasonably foreseeable. The causal connection is not broken where the original wrongdoer could reasonably have foreseen that injury to another would be a probable consequence of his negligence.

*McClellan v. Tottenhoff,* 666 P.2d at 414 (citations omitted). *See also Century Ready–Mix Co. v. Campbell County Sch. Dist.,* 816 P.2d 795, 802 (Wyo.1991). Appellant could only be relieved of criminal liability if the wind and the ravine were unforeseeable. However, they were not. The State's argument that wind in Wyoming is foreseeable, especially when emerging from an underpass, is persuasive. There was testimony that the wind was not blowing hard that day, and Patrolman Stauffacher could find no reason why the motorcycle left the highway other than that the driver was under the influence. We also agree with the State that it is foreseeable that there are stationary and often dangerous objects if one deviates from the established roadway. While certainly the wind and the ravine were factors that made the accident worse, they were not unforeseeable. The fact that there may have been wind and there was a ravine along the highway does not relieve appellant from his criminal negligence for driving the motorcycle under the influence of alcohol and drugs to a degree that he was incapable of driving safely.

## IMPERMISSIBLE MANDATORY PRESUMPTION

▪ In *Buckles v. State,* we noted that the vehicular homicide statute does not carry a presumption that specified quantities of alcohol render one incapable of driving safely. *Buckles,* 830 P.2d at 706. Rather, we said the sole question is whether the driver, being under the influence, was incapable of driving safely. *Id.*

Appellant argues that his conviction must be reversed because the statutory scheme establishes an impermissible mandatory presumption that appellant was incapable of safely driving because he had an alcohol concentration of .10 percent or more. The State, on the other hand, argues that any "mandatory presumption" is not at issue in this case because the district court did not employ an impermissible mandatory presumption in convicting appellant of aggravated vehicular homicide.

After reviewing the record, we agree with the State that the district court did not rely on presumptions but instead found each element from the evidence presented at trial. Based on the evidence, and not any presumption, the district court properly concluded that appellant drove his motorcycle while under the influence of alcohol and cocaine to an extent he could not drive safely and that his impairment was the proximate cause of Ms. Davis' death.

In this trial the State did not merely point to appellant's blood alcohol content as evidence of intoxication. Rather the State presented independent evidence of impairment. Both Undersheriff Kozisek and Patrolman Stauffacher testified that they could smell alcohol on appellant's breath at the scene of the accident. Deedra Hawk, a chemist from state public health, testified about an individual's level of impairment:

At above .17 you're going to have a decrease in judgment, your sensory perceptions are going to be altered, decreased, and your motor skills, your reaction time and such is also decreased.

Q. How would a blood alcohol concentration of a .17 affect a person's ability to operate a motor vehicle?

A. Well, your sense of judgment for one thing is going to be off. It's not going, as you know, it's not going to be normal. You're not going to be able to react to situations near as quickly and your judgment on what you should do in that situation is going to be altered also.

Ms. Hawk also testified that the cocaine present in appellant's blood stream was ingested within a 12–hour period of time prior to when the sample was taken after

the accident. Ms. Hawk then testified about the effect of cocaine and alcohol together:

> Q. Now, what can you tell us then about the effect of cocaine and alcohol together on the human physiology?
>
> A. They are going to accentuate each other. The cocaine is going to make the alcohol more evident and vice versa. The one thing that they have also found in the studies that I have read is that the alcohol increases the toxicity of the cocaine which makes it more lethal. It also seems to increase the paranoia and hallucinations, especially the paranoia. They think that people are after them and such.

The State also points out that the prosecutor was attempting to prove a violation of W.S. 6–2–106(b)(i), the driving while under the influence provision of the vehicular homicide statute rather than the recklessness provision under W.S. 6–2–106(b)(ii). While the indictment and complaint are not tailored that specifically, the evidence presented does reflect that approach, which is certainly permissible.

 Under W.S. 31–5–233, driving while under the influence can be proven in two ways. Section (b)(i) prohibits driving if the person has an alcohol concentration of .10 percent or more. W.S. 31–5–233 (1989). Section (b)(ii) prohibits driving if the person is under the influence of alcohol or a controlled substance to a degree which renders him incapable of safely driving. W.S. 31–5–233(b)(ii). If the prosecutor had attempted to prove the aggravated vehicular homicide by using the blood alcohol concentration alone, then the mandatory presumption issue appellant discusses might be before us. However, the prosecutor proved that appellant was incapable of driving safely because he was under the influence of alcohol and a controlled substance. The prosecutor did not merely put on evidence of the blood alcohol concentration and then rest his case. Rather, he presented evidence demonstrating specifically that appellant was incapable of driving safely. Appellant's conviction did not result because he was presumed incapable of driving safely solely because of his blood alcohol concentration, rather he was shown incapable of driving safely because of the effect of the amount of alcohol he had consumed and the accentuating effect of the cocaine. Therefore, the prosecutor did what the statute requires and proved, beyond a reasonable doubt, that appellant was incapable of driving safely because he was operating the motorcycle while under the influence.

## CONCLUSION

The evidence in the record is sufficient to support the district court's finding that appellant was driving the motorcycle at the time of the wreck. The evidence is also sufficient to demonstrate that appellant's operation of the motorcycle while under the influence, to the extent he was incapable of driving safely, was the proximate cause of Ms. Davis' death. The district court did not rely on a mandatory statutory presumption to determine appellant's guilt of the crime charged. The evidence demonstrated that appellant was incapable of driving safely because he was under the influence of alcohol and cocaine. Finding no error, appellant's conviction is affirmed.

Affirmed.