1996 SD 35

**GREGORY'S, INC. d/b/a Northland Building Center, Plaintiff and Appellee,**

v.

**Charles W. HAAN, Defendant and Appellant.**

**No. 18902.**

Supreme Court of South Dakota.

Considered on Briefs April 27, 1995.

Decided April 3, 1996.

---

Nancy J. Turbak, Watertown, for plaintiff and appellee.

Gale E. Fisher, Sioux Falls, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1] A supplier filed liens against a developer's properties and sued to collect delinquent accounts. The developer counterclaimed for breach of contract and slander of title. The trial court granted the supplier's motions for summary judgment and dismissal. We affirm in part, reverse in part and remand.

## FACTS

[¶ 2] Charles Haan built and sold homes in Watertown. Northland Building Center supplied materials for Haan's housing projects and even acted as general contractor in some instances. Haan and Northland had agreed that payment for materials supplied to Haan would not be due upon receipt, but when the matter came to court the parties contradicted each other on precisely when Haan's payments were due. According to Northland, when the homes were "done and enclosed" Haan was to settle his account. Haan contends the accounts were not due until after the homes were completed and sold and after Northland gave a thirty day "notice of request for payment." Haan also asserts Northland agreed not to file a materialman's lien until after giving Haan a thirty-day no-

tice. These agreements, Haan concedes, were "all oral."

[¶ 3] On January 6, 1993 when Haan sold one of the homes for which Northland had supplied materials, he spent the sale proceeds without satisfying his account. He sold another house on January 29, again without settling his account. Haan claims Northland agreed to defer payment and forbear filing liens until March 15, 1993. Nonetheless, in February, Northland filed materialman's liens against the two properties for which it had supplied materials. On March 12, Northland also filed a lien against lots five and six and the east two feet of lot four in block six of Haan's First Addition. Indisputably, lot six was vacant and unimproved; however, Northland asserts lot six was connected to lot five and the east two feet of lot four, for which it supplied materials. Northland filed a lien on Haan's personal home too, but it had supplied no labor or materials on that property for over two years. The right to file a lien statement ceases at the end of 120 days after the last labor or materials were supplied. SDCL 44–9–15.[1]

[¶ 4] As a result of these lien filings, Haan alleges his lenders cancelled his credit line, two home buyers sued him for breach of warranty of title, and he lost money on other projects in progress. Northland brought suit to enforce the liens and collect Haan's arrearages. Haan counterclaimed: Count I alleged breach of contract based upon the thirty-day notice agreements; Count II alleged "slander of title" for the liens on lot six and Haan's home; and Count III sought punitive damages. The trial court granted Northland's summary judgment motion on Count I and dismissed the remaining counts. Haan raises the following issues on appeal:

I. Is the breach of contract counterclaim barred by the statute of frauds?

II. Did the trial court properly dismiss the counterclaim alleging false lien statements because they were privileged communications?

III. Did the trial court abuse its discretion in denying Haan's Motion to File a Second Amended Counterclaim?

1. Northland's appellate counsel was not its attor-

## ANALYSIS

▆▆▆ [¶ 5] Our review of summary judgment motions is well established:

> [W]e must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to a judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubt should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Waddell v. Dewey County Bank*, 471 N.W.2d 591, 593 (S.D.1991); *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968).

### [¶ 6] *I. Unenforceable Oral Extension of Credit*

▆▆▆ [¶ 7] Northland's motion for summary judgment focused on the following paragraph in Haan's counterclaim:

> Plaintiff agreed to extend credit to Defendant and further agreed to make payment requests to Defendant thirty (30) days before anticipated performance by Defendant. Plaintiff further agreed not to file mechanic's liens until and after they had given a thirty (30) day notice to Defendant.

The trial court held that these oral agreements violated the statute of frauds and were thus unenforceable. SDCL 53–8–2(4) (agreements for an extension of credit are not enforceable unless in writing). Haan argues his counterclaim makes no "claim that [Haan] is demanding that [Northland] extend credit to him under the terms of an oral agreement. The credit has already been extended[.]" Haan's counterclaim seeks damages for breach of oral agreements whereby payment for credit previously extended would not be required until after Northland gave him a thirty day notice and likewise no liens would be filed until after such notice.

ney when these liens were filed.

[¶ 8] A debt is due when a creditor has the right to demand payment and to enforce collection if not paid. *Northwest Bergen v. Midland Park*, 254 N.J.Super. 729, 604 A.2d 229 (1992). Northland could have demanded payment when Haan obtained materials. The account was "presently payable" (*Livingston v. Tapscott*, 585 So.2d 839 (Ala. 1991)) or payable on demand. *Belcher v. Kirkwood*, 238 Va. 430, 383 S.E.2d 729 (1989). Although "credit" is not defined in South Dakota law, other jurisdictions describe it as the right granted by a creditor to a debtor to defer a debt payment or to incur debt and defer its payment. *See, for example,* Uniform Consumer Credit Code § 1.301(7); 12 CFR § 226.2(14) (1994); *Ault v. General Property Management Co.*, 683 P.2d 988, 991 (Okla.Ct.App.1984), citing Okla. Stat.Tit. 14A, § 1–301(7) (1971); *Iberlin v. TCI Cablevision*, 855 P.2d 716, 720 (Wyo. 1993), citing Wyo.Stat. § 40–14–140(a)(vii) (1977). The purchase or acquisition of property or services with deferred payment plainly qualifies as credit. *Porter v. Hill*, 314 Or. 86, 838 P.2d 45, 52 (1992). Haan obtained credit when he incurred debt by acquiring building materials from Northland for which he deferred payment. Now the question is, would an oral agreement to give a thirty day notice before a debt became due or before a lien would be filed, constitute a further extension of credit?

[¶ 9] An extension of credit, as noted by *In re Forfeiture of One 1983 Lincoln*, 497 So.2d 1254 (Fla.Dist.Ct.App.1986), means to make or renew a loan of money or any agreement to forbear enforcing repayment of such loan. Consequently, we conclude Haan's alleged thirty-day notice agreements with Northland were contracts for further extensions of credit. Delaying payment for thirty days beyond a "notice of request for payment" or suspending the right to file a lien for thirty days after notice, effectively defers collecting or enforcing a debt. Thus Haan sought damages for the breach of an unenforceable oral contract for an extension of credit. SDCL 53–8–2. We uphold the trial court's grant of summary judgment on Count I.

[¶ 10] **II. Disparagement of Title and Privilege**

[¶ 11] In his counterclaim Haan charged Northland with slander of title for filing liens against his personal home and a vacant lot he owned. Haan cites SDCL 44–2–9 as authority for his disparagement of title claim:

> Any person who shall file such a lien statement without reasonable grounds to believe that he is entitled to such lien or who shall file a statement containing any willfully made false substantial statement and who shall fail upon demand to execute and deliver to the property owner a full and complete discharge of such lien claim shall be liable in a civil action for all damages, expenses, and costs, including attorney's fees, caused to the property owner and an additional penalty of one hundred dollars to be included in the judgment in such action.

From examining the context in which this law was enacted, the term "such a lien" unmistakably refers to the immediately preceding statutes dealing with liens on personal property. SDCL 44–2–3 et seq. So SDCL 44–2–9 is inapplicable to filing a false or unfounded materialman's lien under SDCL ch. 44–9.

[¶ 12] Will the common law support a disparagement of title claim in South Dakota? "In this state the rules of the common law ... are in force, except where they conflict with the will of the sovereign power[.]" SDCL 1–1–24. This Court has specifically recognized a slander of title cause of action for filing a false mechanic's lien. *Johnson v. Kirkwood, Inc.*, 306 N.W.2d 640 (S.D.1981) (reversing a jury's award for lack of evidence of slander of title). At least one of our statutes also alludes to such an action. SDCL 43–30–9. Other states have likewise recognized this action at common law. *Williams v. Hair Stadium, Inc.*, 334 N.W.2d 354 (Iowa.Ct.App.1983); *Peters Well Drilling Co. v. Hanzula*, 242 N.J.Super. 16, 575 A.2d 1375 (1990). *See generally* 7 AMJURPOF 2D Slander of Title 133 § 1 (1975). The rule is expressed in RESTATEMENT (SECOND) TORTS (1977):

**§ 623A. Liability for Publication of Injurious Falsehood—General Principle.**

One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if

(a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and

(b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

**§ 624. Disparagement of Property—Slander of Title.**

The rules on liability for the publication of an injurious falsehood stated in § 623A apply to the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property.[2]

To establish disparagement of title, it must be shown that publication of the falsehood: (1) was derogatory to the title to plaintiff's property, its quality, or plaintiff's business in general, calculated to prevent others from dealing with plaintiff or to interfere with plaintiff's relations with others to plaintiff's disadvantage (often stated as malice); (2) was communicated to a third party; (3) ma-

terially or substantially induced others not to deal with plaintiff; and (4) resulted in special damage. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 128 at 967 (5th Ed.1984). Haan's complaint stated a cause of action under the common law.[3] Now the question is whether the filing of a false materialman's lien is privileged.

■■■ [¶ 13] Northland moved to dismiss the disparagement of title counterclaim pursuant to SDCL 20–11–5(2), which grants an absolute privilege for communications made in judicial proceedings. The trial court granted the motion. Haan argues the privilege in this statute applies only to slander of a person, not property. *See* SDCL 20–11–4 (defining slander as false and unprivileged publication against "any person"). We need not determine whether in this case the privilege applies solely to persons, because regardless it applies only to "communication" in judicial proceedings. SDCL 20–11–5; *see also Hughes v. O'Connor*, 313 N.W.2d 463 (S.D.1981)(communication in judicial proceeding essential element to invoke privilege). Some jurisdictions deduce the filing of mechanic's lien is part of a judicial proceeding. *Frank Pisano & Associates v. Taggart*, 29 Cal.App.3d 1, 105 Cal.Rptr. 414 (1972); *Donohoe Const. v. Mount Vernon Associates*, 235 Va. 531, 369 S.E.2d 857 (1988); *contra Peters Well Drilling*, 575 A.2d at 1375. In South Dakota, a materialman's lien may be ancillary to judicial action—the filing is a prerequisite to a lien foreclosure. SDCL 44–

---

**2.** The restatement carefully distinguishes "injurious falsehood" (slander of title) from "defamation" (libel and slander).

> The action for injurious falsehood is obviously similar in many respects to the action for defamation. Both involve the imposition of liability for injuries sustained through publication to third parties of a false statement affecting the plaintiff. Despite their similarities, however, the two torts protect different interests and have entirely different origins in history. The action for defamation is to protect the personal reputation of the injured party; it arose out of the old actions for libel and slander. The action for injurious falsehood is to protect economic interests of the injured party against pecuniary loss; it arose as an action on the case for the special damage resulting from the publication.

RESTATEMENT (SECOND) OF TORTS § 623A cmt. g (1977).

**3.** Quoting from the relevant parts of Haan's counterclaim, he alleged:

> (6) The statements published in the mechanic's liens are false and untrue, and the lien statements were filed by Plaintiff knowing that Plaintiff was not entitled to a lien upon the property.
> (7) Plaintiff intentionally published the statements, even though Plaintiff knew, or should have known, that it would result in damage to Defendant, and Plaintiff published its statements maliciously, and with intent to injure, vex, or annoy Plaintiff.
> (8) As a proximate result of the Plaintiff's conduct in filing these two mechanic's liens, the Defendant's title has been disparaged and Defendant has been damaged in various respects.

9–23. Still, a lawsuit will not necessarily follow from filing a lien and often does not. Yet the lien may remain a valid encumbrance on the property for many years (SDCL 44–9–24) and the property owner must take action to force its removal. SDCL 44–9–26. We conclude the filing of materialman's lien is not a judicial proceeding, so the privilege accorded under SDCL 20–11–5(2) will not apply. The law, however, indulges another privilege in these circumstances.

[¶ 14] Many jurisdictions recognize a conditional privilege (sometimes expressed in different terms) to file good faith claims in the public records. See, for example, *Kelly v. First State Bank*, 145 Minn. 331, 177 N.W. 347 (1920); *Continental Supply Co. v. Price*, 126 Mont. 363, 251 P.2d 553 (1952); *Briggs v. Coykendall*, 57 N.D. 785, 224 N.W. 202 (1929); *Barquin v. Hall Oil Co.*, 28 Wyo. 164, 202 P. 1107 (1922). The privilege is subsumed in the requirement that the person suing for disparagement of title must show malice or that the lien filer had an illegitimate purpose. Under this privilege, even if a lien filing was erroneous, it will not support a disparagement of title action if the person who filed acted in the reasonable belief that the filing was valid. *Hicks v. Earley*, 235 Ark. 251, 357 S.W.2d 647 (1962); *Sullivan v. Thomas Organization*, 88 Mich.App. 77, 276 N.W.2d 522 (1979). Mere negligence in filing a false lien statement is insufficient to surmount the privilege; knowledge or reckless disregard of falsity is required. RESTATEMENT (SECOND) TORTS § 593, cmt c, §§ 594 and 646A (1977); *see also Kensington Development Corp. v. Israel*, 142 Wis.2d 894, 419 N.W.2d 241 (1988)(applying conditional privilege to lis pendens notice). Northland's lien filings carry a conditional privilege and to overcome it Haan must show they were false and not filed in good faith *See* RESTATEMENT (SECOND) TORTS § 650A cmts b, d (1977); *see*

*also Hicks*, 357 S.W.2d at 649; *Forman v. Cheltenham Nat. Bank*, 348 Pa.Super. 559, 502 A.2d 686, 688 (1985).

[¶ 15] The circuit court incorrectly dismissed Haan's disparagement of title counterclaim ruling the filing of the lien statements were absolutely privileged, when in fact a conditional privilege applied. We therefore reverse and remand for further proceedings consistent with this opinion.

[¶ 16] ***III. Motion to Amend***

[¶ 17] Approximately two weeks after the summary judgment and dismissals were granted and over a year after filing an amended counterclaim, Haan sought and was denied the court's permission under SDCL 15–6–15(a) to file a second amended counterclaim to further clarify the contractual relationship between the parties and to cite SDCL 44–2–9 as the basis for his disparagement of title action. Our holding now makes at least part of the grounds for amendment moot, but to the extent the issue remains intact, we conclude the denial of this motion was within the trial court's discretion. Finding no abuse, we affirm the ruling. *Croes Family Trust v. Small Business Administration*, 446 N.W.2d 55 (S.D.1989).

[¶ 18] Affirmed in part, reversed in part and remanded.

[¶ 19] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.