1997 SD 33

John and Gloria **WILDEBOER**, as conservators of Jonathan Wildeboer, a minor, Plaintiffs and Appellants,

v.

The **SOUTH DAKOTA JUNIOR CHAMBER OF COMMERCE, INC.**; George R. Fink d/b/a The Bar; Bill Debondt d/b/a Bill's Bar; Dennis Eliason d/b/a The Only One Lounge; Burt's Lounge, Inc.; and John Doe d/b/a The Wheel, Defendants and Appellees.

No. 19461.

Supreme Court of South Dakota.

Argued Oct. 22, 1996.

Decided March 26, 1997.

Steven M. Johnson & Chad W. Swenson of Johnson, Heidepriem, Miner & Marlow, Sioux Falls, for plaintiffs and appellants.

Michael L. Luce & Melissa Hinton of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellee SD Junior Chamber of Commerce, Inc.

Gary P. Thimsen & Peter Sommervold of Woods, Fuller, Shultz & Smith, Sioux Falls, for appellee Fink.

Kenneth D. Bertsch & Tracy Niemann of Ulmer, Hertz & Bertsch, Menno, for appellee Debondt.

William C. Garry of Cadwell, Sanford, Deibert & Garry, Sioux Falls, for appellee Eliason.

Richard L. Travis & John Billion of May, Johnson, Doyle and Becker, Sioux Falls, for appellee Burt's Lounge.

Gary J. Pashby & Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for appellee John Doe.

SABERS, Justice.

[¶ 1] **Justice Richard W. Sabers delivers the majority opinion of the Court on Issue 1, which affirms the trial court's issuance of summary judgment in favor of appellee South Dakota Junior Chamber of Commerce, Inc.**

[¶ 2] **Justice David Gilbertson delivers the majority opinion of the Court on Issue 2, which affirms the trial court's issuance of summary judgment in favor of appellee establishments licensed to sell alcoholic beverages.**

[¶ 3] SABERS, Justice, writing the majority opinion on Issue 1, which affirms the trial court's issuance of summary judgment in favor of appellee South Dakota Junior Chamber of Commerce, Inc.

[¶ 4] Wildeboers brought an action against the South Dakota Junior Chamber of Com-

merce (SDJCC) and five small town bars for negligence in causing the accident which left their fifteen-year-old son severely burned and disfigured. They argue the defendants worked together to organize, sponsor, and promote the "poker run" that led to the accident. Summary judgment was granted to all defendants and Wildeboers appeal.

## FACTS

[¶ 5] On June 20, 1992, the Harrisburg chapter (Harrisburg chapter) of the SDJCC sponsored a charitable poker run with five scheduled stops at bars in Harrisburg, Canton, Hudson, Beresford, and Lennox.[1] Proceeds were to go to families in need in the Harrisburg area. To participate in a poker run, contestants visit each bar and receive a playing card, or in this case a token to later be exchanged for a playing card.[2] At the end of the run, individuals who have drawn the best poker hands win prizes. Primarily a social event for motorcycle enthusiasts, the majority of the participants were motorcyclists.

[¶ 6] Randy Borgheiinck and Linda Kiousis registered for the poker run in Harrisburg and proceeded to the next stop, Canton, on Borgheiinck's 1978 Harley Davidson Lowrider motorcycle. They continued on the established route, visiting the designated bars in Canton, Hudson, and Beresford. While the record does not reflect the precise amount of alcohol consumed by either, one witness observed them drinking wine coolers in Beresford before they left for the fifth stop in Lennox. Unfortunately, they never made it there.

[¶ 7] As they and three other motorcyclists raced north on Highway 17 at speeds estimated between 75 and 100 miles per hour, Jonathan Wildeboer was traveling south on the same highway, preparing to make a left turn onto Lincoln County Road # 128. He

turned his pickup in front of the Borgheiinck motorcycle. The subsequent crash and explosion of the pickup's gas tank claimed the lives of Borgheiinck and Kiousis. Wildeboer suffered severe and disfiguring second and third degree burns over his entire body.

[¶ 8] Jonathan Wildeboer's parents sued the SDJCC and the five bars (Bars) for negligence in organizing, sponsoring, and promoting the poker run.[3] They did not sue the Harrisburg chapter or its individual members. The Wildeboers claim the SDJCC and the Bars are at fault for "encouraging the consumption of alcohol and high speed operation of motorcycles."

## STANDARD OF REVIEW

[¶ 9] Our standard of review for summary judgment is well-established:

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Lamp v. First Nat'l Bank of Garretson,* 496 N.W.2d 581, 583 (S.D.1993) (citation omitted).

[¶ 10] "The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is

---

1. The five bars designated as stops on the poker run were "The Bar" (Harrisburg), "The Wheel" (Canton), "Bill's Bar" (Hudson), "Burt's Lounge" (Beresford), and "The Only One Lounge" (Lennox).

2. For this event, entrants were given a bolt in Harrisburg. Each of the five bars then distributed colored nuts which were placed on the bolt and later exchanged for playing cards. Players

were to return to Harrisburg to make the exchange.

3. Wildeboers also argue that 1) a new cause of action, "aiding and abetting the commission of a tort," be adopted; and 2) defendants be held jointly liable under a "market enterprise" theory. For discussion of these issues, see note 10, *infra.*

entitled to judgment as a matter of law." *State Dep't of Revenue v. Thiewes,* 448 N.W.2d 1, 2 (S.D.1989) (citation omitted). "Summary judgment is generally not feasible in negligence cases because the standard of the reasonable man must be applied to conflicting testimony.... It is only when the evidence is such that reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this occurs rarely." *Lamp,* 496 N.W.2d at 583 (citing *Trammell v. Prairie States Ins. Co.,* 473 N.W.2d 460, 462 (S.D.1991) (quoting *Wilson v. Great N. R.R. Co.,* 83 S.D. 207, 212–13, 157 N.W.2d 19, 22 (1968) (citations omitted))). "Resolving negligence questions is an elemental jury function[.]" *Robbins v. Buntrock,* 1996 SD 84, ¶ 8, 550 N.W.2d 422, 425.

■ [¶ 11] The trial court stated in its order granting summary judgment that "there is no genuine issue of material fact that would sustain any theory of liability or recovery against Defendants[.]" "A surmise that a party will not prevail upon trial is not sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious it would be futile to try them." *Wilson,* 83 S.D. at 212, 157 N.W.2d at 21 (footnote & citation omitted).

[¶ 12] **1. The SDJCC**

■ [¶ 13] Wildeboers claim the SDJCC failed to properly investigate the poker run prior to its occurrence and failed to prohibit or supervise alcohol-related charitable events. These omissions, they argue, constituted a breach of its duty of ordinary care. "Duty may be imposed by common law or by statute." *Poelstra v. Basin Elec. Power Coop.,* 1996 SD 36, ¶ 11, 545 N.W.2d 823, 826 (citation omitted). SDCL 20–9–1 provides:

> Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence.

This statute is "a simple codification of the common law of negligence." *In re Certif. of Questions of Law (Knowles v. United States),* 1996 SD 10, ¶ 21, 544 N.W.2d 183, 188 (citing *Baatz v. Arrow Bar,* 426 N.W.2d 298, 304 (S.D.1988)) (other citations omitted). In *Poelstra,* we noted this statute does not define the circumstances under which the law imposes a duty on an alleged tortfeasor, but "simply recognizes the right of injured persons to recover from wrongdoers who fail to exercise ordinary care." 1996 SD 36 at ¶ 13, 545 N.W.2d at 826.

■ [¶ 14] Wildeboers do not claim any other statute imposes a duty on SDJCC to monitor and supervise the local chapters' activities. "Whether a common-law duty exists depends on the foreseeability of injury." *Id.* at ¶ 16, 545 N.W.2d at 826–27 (citations omitted).

■ [¶ 15] The primary organizers of the poker run were the members of the Harrisburg chapter of the SDJCC; they are not named defendants in this suit. We affirm the dismissal of the suit against the SDJCC because that organization, a legal entity separate from the Harrisburg chapter, had no knowledge, input, or responsibility with respect to the poker run. The SDJCC gave local chapters advice and suggestions for projects designated as "priority projects," but those were primarily non-moneymaking ventures such as "Punt, Pass, and Kick."

[¶ 16] Daron Bunger served twice as president for the Harrisburg chapter, and he testified: 1) All planning for charitable events was done strictly on the local level; 2) no rules, regulations, or guidelines regarding charitable endeavors were issued by the SDJCC; 3) approval from the SDJCC was neither sought nor required to undertake a charitable project; 4) the idea for the 1992 poker run came from a member of the Harrisburg chapter, not the SDJCC; 5) the SDJCC did not receive any proceeds from the poker run; 6) the program sponsored by the SDJCC where local chapters could vie for awards ("Parade of Chapters") was strictly optional, and involved chapters submitting reports to the SDJCC to detail *past,* not future events. Jim Aalbers, another former officer of the Harrisburg Chapter, basically corroborated Bunger's testimony, and added

that a poker run was not considered a "priority project."

[¶ 17] Marjean Gab, the secretary for the SDJCC at the time of the poker run, submitted an affidavit with the following statements: 1) The SDJCC did not plan, organize, sponsor, or promote charitable fundraising events undertaken by the local chapters; 2) the SDJCC was not asked to, nor did it, evaluate or approve the poker run.

[¶ 18] Under these circumstances, there was no duty to monitor and supervise events the occurrence of which the SDJCC was not required to be informed; it is not shown that the accident was foreseeable to the SDJCC.[4] "No one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen." *Poelstra*, 1996 SD 36 at ¶ 16, 545 N.W.2d at 826–27 (citation omitted). The SDJCC met its burden as movant "to show clearly that there is no genuine issue of material fact and that [it] is entitled to judgment as a matter of law." *Thiewes*, 448 N.W.2d at 2.

[¶ 19] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur as to Issue 1.

[¶ 20] GILBERTSON, Justice, writing the majority opinion on Issue 2, which affirms the trial court's issuance of summary judgment in favor of appellee establishments licensed to sell alcoholic beverages.

[¶ 21] This case arises from a motor vehicle accident which resulted in the deaths of two persons and the sustaining of permanent injuries to a fifteen-year old boy. Clearly the accident was avoidable. The immediate cause was Borgheiinck's driving his motorcycle at speeds of 75 mph to 100 mph. However alcohol, as well as speed, was also involved in Borgheiinck's driving. Wildeboers seek compensation from those they claim to be the organizers of the poker run, that being the South Dakota Junior Chamber of Commerce (SDJCC)[5] and the bars that participated in the event.

[¶ 22] The subject of liability for the furnishing of alcohol to tort-feasors has been before this Court on numerous occasions. *See Griffin v. Sebek*, 90 S.D. 692, 245 N.W.2d 481 (1976); *Walz v. City of Hudson*, 327 N.W.2d 120 (S.D.1982); and *Baatz v. Arrow Bar*, 426 N.W.2d 298 (S.D.1988). The carnage caused by this problem is appalling. *See Walz*, 327 N.W.2d at 123, n*.

[¶ 23] In this case, Wildeboers seek to have this court recognize a cause of action for common law negligence, codified as SDCL 20–9–1. As far as the common law aspect, SDCL 1–1–24 provides that "[i]n this state the rules of the common law … are in force, except where they conflict with the will of the sovereign power, expressed in the manner stated in § 1–1–23." The sovereign will in SDCL 1–1–23 is found in part in our state statutes. *Walz, supra.*

[¶ 24] It has been a long standing rule of statutory construction that general statutes must yield to specific statutes if they are not consistent. *U.S. Lumber, Inc. v. Fisher*, 523 N.W.2d 87, 91 (S.D.1994); *Nelson v. School Bd. of Hill City*, 459 N.W.2d 451, 454 (S.D.1990). Thus the question becomes whether SDCL 20–9–1 is consistent with the statutes specifically dealing with the sale of alcohol where injury subsequently occurs.

SDCL 35–11–1 provides:

The Legislature finds that the consumption of alcoholic beverages, rather than the serving of alcoholic beverages, is the proximate cause of any injury inflicted upon another by an intoxicated person. Therefore, the rule in *Walz v. City of Hudson*,

---

4. This conclusion is limited to the facts of this case; there may be circumstances under which a statewide organization, such as the SDJCC, may be liable for the consequences of actions of a local chapter.

5. Although the poker run was organized by the Harrisburg Chapter of the JC's, it was not sued nor were any of its members. We were informed at oral argument by Wildeboers that the Harrisburg JC's is an unincorporated association and that the only way to sue it would be to sue its approximately 35 members individually. The Wildeboers opted not to do so and instead sued the State Chapter and the participating bars.

327 N.W.2d 120 (S.D.1982) is hereby abrogated.

SDCL 35–4–78 provides:

No licensee may sell any alcoholic beverage:

(1) To any person under the age of twenty-one years; or

(2) To any person who is obviously intoxicated at the time.

A violation of this section is a Class 1 misdemeanor.

*However, no licensee is civilly liable to any injured person or his estate for any injury suffered, including any action for wrongful death, or property damage suffered because of the intoxication of any person due to the sale of any alcoholic beverage in violation of the provision of this section.* (emphasis added).

[¶ 25] In *Baatz*, an attack on the constitutionality of these two statutes was presented to this Court. A majority of the justices in *Baatz* failed to find the statutes unconstitutional. No constitutional issues are brought by Wildeboers and thus the statutes are valid enactments which must be applied to the facts of this case regardless of our personal distaste for their effect. *Baatz*, 426 N.W.2d at 307 (Miller, J., dissenting).

[¶ 26] The statutes clearly preclude recovery against a bar for the serving of the alcohol. SDCL 35–11–1 provides that it is not the serving of the alcoholic beverage which is the proximate cause of the injury inflicted by an intoxicated person. While it may be argued that this result is factually and legally questionable, it simply reflects the Legislature's interpretation of one of its own statutes, SDCL 20–9–1. If the Legislature can validly enact, repeal and amend statutes, we know of no constitutional doctrine that precludes it from interpreting a statute by the enactment of another statute. Our cases are legion where we seek to interpret the intent of the Legislature. *Klinker v. Beach*, 1996 SD 56, ¶ 10, 547 N.W.2d 572, 575; *Delano v. Petteys*, 520 N.W.2d 606, 609 (S.D.1994); *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107 (S.D.1993).

Here the Legislature has chosen to make its intent explicit by the enactment of two subsequent statutes, SDCL 35–11–1 and 35–4–78.

[¶ 27] The text of SDCL 35–4–78 makes it clear that there is no civil liability to sellers of alcoholic beverages for the furnishing of alcoholic beverages to persons who are "obviously intoxicated."

[¶ 28] Our departure from the analysis of the dissent on this issue is two-fold, one factual and one legal. First, there is absolutely no evidence in the record that any of the Defendant Bars, save one, furnished any alcohol to Borgheiinck. It is only Burt's Lounge of Beresford that the record shows furnished a wine cooler to Borgheiinck. While Borgheiinck obviously got additional liquor from somewhere, Wildeboers cannot tie it to the remaining Defendant Bars. There was no prize or incentive offered by the poker run sponsors concerning speed of the motorcycles. This was a not a timed race. It was the quality of the poker hand that determined which participants won prizes.

[¶ 29] Second, SDCL 35–4–78, at a minimum, makes it clear that there is no civil liability for furnishing alcohol to an "obviously intoxicated" patron.[6] The first sentence of SDCL 35–11–1 goes farther and expands this immunity to the furnishing of alcoholic beverages by a bar regardless of the condition of the consumer. Yet the dissent on this issue would somehow hold the Bars liable for ordinary negligence.

[¶ 30] We conclude that the scope of SDCL 35–4–78 and 35–1–11 is the Legislature's policy decision that no civil liability will attach to a bar for the furnishing of alcoholic beverages to a person who subsequently causes an injury to a third party. As we stated in *Walz*, "[i]f the Legislature does not concur with our application of SDCL 35–4–78(2) as now announced, it is the prerogative of the Legislature to so assert." 327 N.W.2d at 122. Unfortunately for Wildeboers, the Legislature chose to exercise its prerogative by amending SDCL 35–4–78 and enacting SDCL 35–11–1 to preclude recovery in this case.

---

**6.** It is very unlikely that the Legislature attempted to provide immunity for those bars who sell to "obviously intoxicated" patrons and yet would hold them liable for the sale of liquor to those patrons who are not "obviously intoxicated."

[¶ 31] As such, we affirm the circuit court in its dismissal of the action against the bars. In so doing, we respectfully suggest to the Legislature that it re-examine this issue.

[¶ 32] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 33] SABERS, Justice, dissenting as to Issue 2.

### [¶ 34] 2. The Bars

[¶ 35] I dissent on this issue for the reasons expressed in *Baatz v. Arrow Bar*, 426 N.W.2d 298 (S.D.1988). *Baatz* was decided on June 15, 1988. *Baatz* held that bars were subject to civil liability to those wrongfully injured by one served alcoholic beverages while intoxicated. It has been the law for eight and one-half years. Now Justice Gilbertson's writing on this issue would abandon or sidestep *Baatz* and provide immunity to bars until the pertinent statutes are declared unconstitutional again or changed by the Legislature.

[¶ 36] I would not postpone the inevitable. In this instance, justice delayed is justice denied. The statutes involved in *Baatz* have *not* been corrected or modified. They contain the same defects and deserve the same treatment they received in *Baatz*.[7]

[¶ 37] Contrary to the lack of involvement of the SDJCC, the Bars played a significant role in the poker run; whether that role constituted negligence presents genuine issues of material fact. The Bars consented to take part in the poker run by serving as official stops. Most, if not all, were previously involved in poker runs and knew the participants in a poker run were predominately motorcyclists. They allowed posters soliciting entrants to be displayed in the bars. The tokens were dropped off at an earlier date, and the Bars played a part in dispensing them to participants. Some of the Bars engaged extra help that day to assist in serving alcohol and food. All of the Bars served alcohol to the riders that day.

[¶ 38] As noted above, duty may be imposed by common law, dependent upon whether an injury is foreseeable. Foreseeability must be analyzed in light of all the circumstances, and depends on the facts in each individual case. *Small v. McKennan Hosp.*, 437 N.W.2d 194, 199 (S.D.1989). It takes no extraordinary foresight to envision the potentially deadly effects of combining alcohol and motorcycles; nor does it take an extraordinary amount of research to find a reported case of a fatality on a poker run. *See Glazier v. State*, 843 P.2d 1200 (Wyo. 1992) (upholding motorcyclist's conviction for aggravated vehicular homicide for death occurring during poker run).[8]

[¶ 39] There are genuine issues of material fact whether Borgheiinck was under the influence of alcohol. Tests conducted on Borgheiinck at the scene revealed a blood alcohol content (BAC) of 0.069, an amount which legally does not give rise to any presumption whether he was or was not under the influence of alcohol. *See* SDCL 32–23–7(2) (providing that amount is a fact which may be

---

7. *Compare* SDCL 35–11–1 ("[C]onsumption of alcoholic beverages, rather than the serving of alcoholic beverages, is the proximate cause of any injury inflicted upon another by an intoxicated person . . . .") *and* SDCL 35–4–78 (classifying as a misdemeanor the sale of alcoholic beverages to an obviously intoxicated person, yet attempting to shield a licensee-violator from civil liability) *with Baatz v. Arrow Bar*, 426 N.W.2d 298, 303 (S.D.1988) (construing the two statutes and stating that "the task of determining proximate cause (and civil liability for wrongdoing) belongs to the courts, not the legislature" and "[t]o say that civil liability for such wrongdoing shall rest solely with the consumer, to the exclusion of all other wrongdoers, is questionable in fact and in theory. In fact, the words of the amendment [to SDCL 35–4–78] acknowledge serving of alcoholic beverages as a cause of injuries contrary to the legislative finding in SDCL 35–11–1").

In addition, even when providing private landowners, the State, and its political subdivisions broad based immunity for ordinary negligence under the Recreational Use Statutes, the South Dakota Legislature excepts out violations of county or municipal ordinances or state law which violation is a proximate cause of the injury. *See* SDCL 20–9–16 (landowner); 20–9–22 (political subdivision) (Supp.1996); 20–9–27 (State) (Supp.1996).

8. In *Glazier*, a passenger on a motorcycle was killed shortly after the second stop of a poker run. She and the driver spent approximately 45 minutes at each of the first two bars, drinking alcohol at both stops. Neither wore a helmet, and she died of severe head injuries. The defendant driver, whose blood alcohol concentration was .17 at the scene of the accident, survived with severe injuries.

considered with other evidence in determining the guilt or innocence of one prosecuted for "driving while under the influence"). Kiousis' BAC was 0.106, an amount which gives rise to a presumption that the individual was under the influence of intoxicating liquor. *Id.* at subdivision (3). Both Borgheiinck and Kiousis were observed drinking wine coolers at Beresford, the stop immediately preceding the crash.

[¶ 40] The comment accompanying the State Health Laboratory report states, with respect to the test conducted on Borgheiinck: "ALCOHOL RESULT COULD BE AS MUCH AS 15% HIGH DUE TO LOW SAMPLE VOLUME LESS THAN 1 ML." [9] This comment is apparently subject to an interpretation different from the seemingly literal translation. Corporal Kevin Grebin of the South Dakota Highway Patrol, an investigator in this case, interpreted the comment to mean the BAC "could have been as high as a .15." The analyst who made the comment was not questioned in the record, and Grebin was the only witness to testify regarding the BAC tests. "If reasonable persons, upon examining the evidence, might reach different conclusions, a motion for summary judgment should be denied and the case tried on the merits." *Limpert v. Bail,* 447 N.W.2d 48, 50 (S.D.1989) (citation omitted).

[¶ 41] The only person who testified regarding Borgheiinck's alcohol consumption that day was his close friend, Harry Lockhart. He stated Borgheiinck was not "a big drinker," but he also testified he saw him drinking an alcoholic beverage right before the crash. Lockhart may not be the most reliable source, in light of his admission to *at least* a beer at every stop: "I probably had more than anybody else[.]"

[¶ 42] The Bars argue that no evidence was presented to prove Borgheiinck was "obviously intoxicated." "Summary judgment is also improper where defendant's defenses involve questions of fact." *Id.* Even if he was not "obviously intoxicated" (an unresolved issue), that would not eliminate questions surrounding the detrimental effect *any*

amount of alcohol had upon his operation of his motorcycle. Nor would it eliminate questions regarding the culpability of promoting participation of an event sure to combine alcohol with motorcycle operation. The Bars did not offer any evidence that he acquired or consumed alcohol anywhere else that day. In this sense, they failed to show that there were no genuine issues of material fact entitling them to summary judgment. *Thiewes,* 448 N.W.2d at 2. The unanswered questions regarding the source and the amount of alcohol imbibed by Borgheiinck present genuine issues of material fact to be resolved by the trier of fact.

[¶ 43] Wildeboers offered the affidavit of Rick Kiley, program director of motorcycle rider education with the South Dakota Safety Council. Kiley provides statistics, compiled by The Motorcycle Safety Foundation, which report that almost 50% of riders killed in motorcycle accidents had been drinking. Of those killed, only about one-third were legally impaired, while the other two-thirds had consumed less than enough to put them legally "under the influence." Kiley attributes the high number of "low-impaired" motorcycle fatalities to the difference between operating an automobile and operating a motorcycle:

> Operating a motorcycle differs greatly from operating an automobile. The most critical differences between operating a motorcycle and operating an automobile are stability and vulnerability. Given the greater instability experienced in operating a motorcycle, the consumption of a small amount of alcohol impairs the rider's ability to operate a motorcycle safely. Consequently, it requires significantly less quantities of alcohol to effectively impair motorcycle riding skills than to impair the skills necessary to safely drive an automobile.

[¶ 44] There are simply too many unanswered questions of material fact, including the amount and the effect of the alcohol consumed, the speed of the vehicles, causation, and foreseeability. Therefore, the suit against the Bars should not have been disposed of by summary judgment and we

---

9. The sample volume was low due to the difficulty of drawing blood from Borgheiinck's severely burned body.

should reverse and remand this issue to resolve these genuine issues of material fact.[10] Therefore, this writing constitutes my dissent in relation to Issue 2, the Bars.

---

**10.** As stated above in note 3, Wildeboers argue that the defendants be held jointly liable under a "market enterprise" theory. This issue is not addressed in their complaint or amended complaint, and the trial court did not mention this theory in the order granting summary judgment. We were not provided with a transcript of the hearing, so we do not know if it was presented at that time.

They also argue the adoption of a new cause of action, "aiding and abetting the commission of a tort." They rely upon the Restatement (Second) of Torts § 876, which provides the general rules for attributing liability to one who gives "substantial assistance or encouragement" to another when the other's conduct is known to constitute a breach of duty. Recognition of a new tort is not necessary to simply instruct the jury in accordance with the guidance of § 876. The concept of joint liability is already established. *See, e.g., State v. Two Bulls,* 1996 SD 53, ¶ 13, 547 N.W.2d 764, 766 ("Tort law has long recognized that the negligence of two or more individuals may combine to cause injuries to another and that each may be held legally responsible for the resulting injuries.") (citations omitted); SDCL 15–8–11 (defining the term "joint tort-feasor"). The comments to § 876 suggest that the determination of liability is made by applying the same factors used in determining the existence of legal causation when there has been negligence or recklessness. The Restatements are simply secondary authority which "tell what the law in a general area is." *Black's Law Dictionary* 1313 (6th ed. 1990); *see also* J. Myron Jacobstein & Roy M. Mersky, *Fundamentals of Legal Research* 365 (5th ed. 1990) (stating that the goal of the American Law Institute in publishing the Restatements was to "produce a clear and precise restatement of the *existing* common law") (emphasis added). This court frequently consults and employs the Restatements. *See, e.g., Petersen v. Dacy,* 1996 SD 72, 550 N.W.2d 91; *Mack v. Kranz Farms, Inc.,* 1996 SD 63, 548 N.W.2d 812; *Gregory's, Inc. v. Haan,* 1996 SD 35, 545 N.W.2d 488; *Wallahan v. Black Hills Elec. Coop., Inc.,* 523 N.W.2d 417 (S.D.1994).