Donald J. BUCKLES, Jr., Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 90–270.

Supreme Court of Wyoming.

April 16, 1992.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, David Gosar, Appellate Counsel, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Kenneth M. McLaughlin, Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Jennifer L. Gimbel, Sr. Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

THOMAS, Justice.

The major issue to be resolved in this case is whether a defendant, charged with aggravated vehicular homicide and aggravated driving under the influence, is entitled to have the jury instructed that it may consider the conduct of a victim who was operating another vehicle in arriving at a determination as to whether the actions of the defendant constitute the cause of death of that victim. Other issues presented and argued relate to the sufficiency of probable cause to arrest Donald J. Buckles, Jr. (Buckles) for driving while under the influence of intoxicating liquor in order to justify the lawfulness of a test of his blood for the presence of alcohol, the results of which were introduced into evidence; the sufficiency of the evidence to sustain the determination by the jury that Buckles' conduct was the proximate cause of the death of David Stegena (Stegena) and the injuries to Maria Lisa Lucero (Lucero); exclusion of evidence of Stegena's use of controlled substances on the occasion in question; and the insufficiency of the record on appeal. We hold that the trial court erred when it instructed the jury with respect to the issue of causation and when it excluded the evidence of the use of a controlled substance by Stegena. We uphold the ruling of the trial court that admitted the result of Buckles' blood alcohol test into evidence. In light of the reversal of the case, we do not further consider the issues relating to the sufficiency of the evidence or the adequacy of the record for review. The judgment and sentence is reversed, and this case is remanded for a new trial in accordance with this opinion.

Buckles, in his Brief of Appellant asserts the following issues:

1. Did the trial court err by admitting evidence of the Appellant's blood alcohol test?

2. Was the evidence admitted in this trial sufficient to prove beyond a reasonable doubt that Appellant's violation of W.S. § 31-5-233 was the proximate cause of another person's death or serious bodily injury?

3. Did the trial court err by failing to instruct the jury that it could consider whether evidence of negligence by the deceased had any bearing on the alleged misconduct of the Appellant, and that it could further consider such evidence regarding the issue of whether Appellant's misconduct was the proximate cause of the accident?

4. Did the trial court err by refusing to admit evidence that the other driver had ingested cocaine prior to the accident?

5. Does this court's decision in *Bearpaw v. State*, No. 89–214 slip op. (Wyo., Dec. 7, 1990) [803 P.2d 70 (1990)], require this case to be reversed and remanded for a new trial?

As Appellee, the State of Wyoming, rephrases those issues in this way:

1. Whether the trial court's evidentiary rulings were proper.

2. Whether the evidence was sufficient to sustain Appellant's convictions of aggravated vehicular homicide and aggravated driving under the influence.

3. Whether the trial court properly instructed the jury on the necessary elements of the offenses, including causation.

4. Whether the absence from the appellate record of certain portions of the trial deprives Appellant of the effective assistance of appellate counsel or necessitates reversal of Appellant's convictions.

At about 10:30 P.M., on the evening of September 1, 1989, Stegena and Lucero went to Food Bonanza, located in Cheyenne Plaza in the city of Cheyenne, to shop for groceries. They completed their shopping in about an hour, and they left the parking lot at Food Bonanza with Stegena driving Lucero's 1984 Subaru. Stegena drove along a frontage road that parallels Nationway, and he turned right to approach the intersection of Windmill and Nationway which is controlled by a stoplight. Stegena entered the controlled intersection with a yellow light in his favor, but that light turned red while the vehicle driven by Stegena was still in the intersection and before it had completed a left turn onto Nationway.

At that time, Buckles was traveling east on Nationway in his red Chevrolet blazer. At his trial, Buckles testified that he was traveling at approximately 40 miles per hour. He said he observed that the light was red as he approached the intersection of Nationway and Windmill, and he slowed down. Then, the light turned green in his favor, and he increased his speed. As he proceeded through the intersection, he slammed into the blue Subaru occupied by Stegena and Lucero.

Stegena was pronounced dead at the scene of the accident. A post-death drug test was performed on Stegena's urine, and it revealed the presence of cocaine metabolites in his urine at the time of his death. The owner and passenger, Lucero, was taken to a hospital emergency room where her diagnosis was a severe head laceration, four broken ribs, and a fractured pelvis.

Buckles struck the windshield of his vehicle in the collision, but he was not treated for any injuries. Since this was a fatal accident, however, a Cheyenne policeman took Buckles to the hospital where a blood sample was drawn. That sample was tested for the presence of alcohol, and that test disclosed that approximately one to one and one-half hours after the collision, Buckles' blood alcohol level was 0.24%. In Wyoming, the level at which a person is presumed to be intoxicated to a degree that renders him incapable of safely driving a motor vehicle is 0.10%. Wyo.Stat. § 31–5–233(b)(i) (1989).[1] As a result of the fatal crash, Buckles was tried by a jury, and he was convicted of one count of aggravated vehicular homicide as defined by Wyo.Stat. § 6–2–106(b)(i) (1991 Supp.) and one count of aggravated driving under the influence as defined by Wyo.Stat. § 31–5–233(h)(i) (1989).[2] Upon conviction, Buckles was sen-

**1.** Wyo.Stat. § 31–5–233(b) (1989) provides, in pertinent part:

No person shall drive or have actual physical control of any vehicle within this state if the person:

(i) Has an alcohol concentration of ten one-hundredths of one percent (0.10%) or more; or

(ii) To a degree which renders him incapable of safely driving:

(A) Is under the influence of alcohol;

(B) Is under the influence of a controlled substance; or

(C) Is under the influence of a combination of any of the elements named in subparagraphs (A) and (B) of this paragraph.

**2.** Wyo.Stat. § 6–2–106(b) (1991 Supp.) provides, in pertinent part:

A person is guilty of aggravated homicide by vehicle and shall be punished by imprison-

tenced to serve not less than six nor more than seven years in the Wyoming State Penitentiary on the aggravated vehicular homicide charge, and he was sentenced to a term of ten months in the county jail on the aggravated driving under the influence charge, with the latter sentence to be served consecutively to the penitentiary sentence. In addition, Buckles was ordered to pay the sum of $50 to the Victim's Compensation Fund. Buckles' appeal is taken from this judgment and sentence.

The issues in this case that lead to reversal are (1) whether a defendant who is charged with aggravated vehicular homicide or aggravated driving under the influence is entitled to have an instruction given to the jury that it may consider the actions of the driver victim when reaching its conclusion as to whether the conduct of the defendant is the cause of the death of or injury to the victims, and (2) whether the trial court erred when it excluded evidence of the use of a controlled substance by Stegena. Our answer to both of these questions is in the affirmative, and the product of that decision is that the trial court must be reversed. We will address these issues in the sequential order in which they arose during the proceedings and trial in the district court.

■ Buckles argues, with respect to the evidence of cocaine metabolites found in Stegena's urine, that this evidence was relevant on the issue of the actual cause of death. He contends vigorously that it well could have had an impact upon the jury's decision with respect to the proximate cause of the collision that resulted in Stegena's death and Lucero's injuries. We reiterate our rule that questions of admissibility of evidence generally are within the sound discretion of the trial court, and its decisions will not be overturned absent a clear abuse of discretion. *Stamper v. State*, 662 P.2d 82 (Wyo.1983); *Weathers v. State*, 652 P.2d 970 (Wyo.1982) (citing *Taylor v. State*, 642 P.2d 1294 (Wyo.1982)). In this instance, we conclude that the exclusion of this evidence was an abuse of the trial court's discretion. We agree with Buckles' arguments and reverse the decision of the trial court.

There is no question that the results of the drug screen performed upon Stegena's urine disclosed the presence of cocaine metabolites. At a pre-trial conference, the State submitted an oral motion *in limine* designed to prevent Buckles from introducing at the trial to the jury evidence of the cocaine metabolites that had been detected in Stegena's urine. Buckles resisted this motion and argued that this evidence was relevant not only to issues of witness credibility, but also to the questions of the proximate cause of the accident and the actual cause of Stegena's death.

At the pretrial hearing, the trial court provisionally granted the oral motion of the State, commenting that there would be no mention of the cocaine until there was some preliminary showing of materiality. At the trial, the county coroner was called as a witness. During the course of his testimony, a further discussion was held outside the presence of the jury with respect to the evidence of cocaine in Stegena's urine. The coroner testified, out of the presence of the jury, that the urine sample was sent to Clinical Labs and that Clinical Labs sent it to Analytitox in Den-

ment in the penitentiary for not more than twenty (20) years, if;
(i) While operating or driving a vehicle in violation of W.S. 10–6–103, 31–5–233 or 41–13–206, he causes the death of another person and the violation is the proximate cause of the death; or....
Wyo.Stat. § 31–5–233(h) (1989) provides, in pertinent part:
As used in this subsection, "serious bodily injury" means bodily injury which creates a reasonable likelihood of death or which causes miscarriage or serious permanent disfigurement or protracted loss or impairment of any bodily member or organ. Whoever causes serious bodily injury to another person resulting from the violation of this section shall be punished upon conviction as follows:
(i) If not subject to the penalty under paragraph (ii) of this subsection, by a fine of not more than five thousand dollars ($5,000.00), imprisonment for not more than one (1) year or both;
....
(iii) Any person convicted under this subsection shall have his driver's license revoked as provided in W.S. 31–7–127.

ver. He stated that the drug screen was performed on the urine and revealed a positive conclusion with respect to cocaine metabolites. The test did not quantify the amount of cocaine in the urine, however. Following this testimony, the trial court excluded the evidence, ruling that no materiality had been demonstrated. There is nothing in the record to indicate that this testimony by the coroner was brought to the jury's attention. The jury did hear the coroner's testimony, however, that following an examination of Stegena's body, both at the scene and in the coroner's office, and after consultation with a physician, a determination was reached that the cause of Stegena's death was massive traumatic brain injury due to a basilar skull fracture. There was no autopsy.

An eyewitness described what he observed at the time of the accident. He stated that, as the Subaru approached the controlled intersection, Stegena was looking at his passenger Lucero. At that point in time, the light facing Stegena turned to yellow. Stegena proceeded slowly into the intersection, and the light turned red as he did so. The witness estimated that the Stegena vehicle was traveling about four miles per hour. There also was testimony that, just prior to the collision, Stegena waved to a pedestrian on the street corner to his right.

Wyo.Stat. § 31–5–233(b) (1989) prohibits driving while under the influence of a controlled substance as well as driving under the influence of alcohol. Unlike the provisions of Wyo.Stat. § 31–5–233(b) and (c) that pertain to alcohol, there is no prescribed concentration in the system with respect to controlled substances, nor is there any presumption attaching to specified quantities. The sole question is whether the person is incapable of driving safely because he is under the influence of a controlled substance.

According to Wyo.R.Evid. 401, evidence is relevant if it tends to make any fact of consequence more or less probable than it would be without that evidence. *Kelly v. State*, 694 P.2d 126 (Wyo.1985); *Grabill v. State*, 621 P.2d 802 (Wyo.1980). In one

count, Buckles was charged under the aggravated vehicular homicide statute, § 6–2–106(b), which requires as one of the elements of the offense that Buckles' driving while intoxicated be the cause of Stegena's death. This element of the crime, like all other essential elements, must be established beyond a reasonable doubt. The evidence of the manner in which Stegena was driving could be perceived as consistent with impairment of his faculties, and would suffice as a foundation to support the introduction of the evidence about cocaine metabolites. The presence of the cocaine metabolites in Stegena's urine was highly relevant in this case. Had the evidence of the cocaine metabolites in Stegena's urine been received into evidence, the jury could have concluded that the State had not met its burden of proof beyond a reasonable doubt.

The cause of death was established simply on the basis of a physical examination by the coroner after consultation with a physician. No autopsy was performed that would have definitively established the cause of death. In his testimony, the coroner admitted that he could not completely rule out some other cause, such as a heart attack. In our view, the evidence of the presence of cocaine metabolites in Stegena's urine was relevant in this case from two perspectives. First, it could have served as the premise for a conclusion that the State had not established the cause of death beyond a reasonable doubt. Second, the evidence could have been a premise for a conclusion that the cause of Stegena's death was his driving while under the influence of a controlled substance, rather than Buckles' driving while intoxicated. This evidence should have been received pursuant to Wyo.R.Evid. 402:

> All relevant evidence is admissible, except as otherwise provided by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible.

The relevancy perhaps is best illustrated by a hypothetical adjustment in the facts. Suppose that Buckles had been killed in this collision and Stegena had survived. After taking him to the hospital, a sample

of Stegena's urine had been taken and tested with the results of the test disclosing the presence of cocaine metabolites. Had Stegena been charged with aggravated vehicular homicide, the relevancy of this evidence would have been clear. In that scenario, it seems equally clear that the evidence of Buckles' intoxication would not have been excluded.

 Proceeding to the instructional issue, Buckles' argument is that the trial court erred in giving two jury instructions and that this error deprived him of a fair trial. Those disputed instructions read:

### INSTRUCTION NO. 8

You are instructed that any negligence on the part of a victim is not a defense to criminal prosecution and does not excuse any criminal acts on the part of a Defendant. The state is required to prove that it was the criminal act on the Defendant's part that caused the death of David Stegena and any injury to Lisa Lucero.

### INSTRUCTION NO. 8A

A proximate cause is a cause which directly brings about the injury either immediately or through happenings which follow one after another.

Buckles accepted these instructions at trial without objection, and he offered no alternative instruction.

 Under the circumstances, his challenges must be sustained, if at all, under the plain error doctrine. Pursuant to Wyo. R.Crim.P. 49(b) and Wyo.R.App.P. 7.05, plain errors or defects that affect substantial rights may be noticed although they were not brought to the attention of the trial court. Under our cases, in order to invoke the plain error doctrine, the following elements must be present: (1) the record must demonstrate clearly what occurred at trial without resort to speculation; (2) a clear and unequivocal rule of law must have been violated in an obvious way; and (3) this violation must have adversely affected some substantial right of the accused. *Monn v. State,* 811 P.2d 1004

(Wyo.1991) (citing *McLaughlin v. State,* 780 P.2d 964 (Wyo.1989); *Gore v. State,* 627 P.2d 1384 (Wyo.1981); *Hampton v. State,* 558 P.2d 504 (Wyo.1977).

With respect to Instruction No. 8, Buckles' argument is that this instruction fails to advise the jury that the actions of the victim may be considered for any bearing they have upon the consequences of the defendant's conduct, as well as for any light that those actions might shed upon whether the conduct of the defendant was the proximate cause of the accident. Instruction No. 8, told the jury that the negligence of a victim is not a defense to the criminal prosecution and does not excuse the defendant's criminal conduct. It continued with an explanation that the State must establish that the defendant's criminal conduct caused the death or injury in the particular instance. We agree with Buckles' contention that this instruction was not complete.

The evidence relating to this legal proposition can be reiterated briefly. Buckles was traveling east on Nationway at about forty to forty-five miles per hour and crashed into the Subaru driven by Stegena as he proceeded through the intersection. Buckles had a blood alcohol level of 0.24% shortly after the collision. Just prior to the collision, Stegena was driving very slowly, about four miles per hour, through the intersection and, while he had proceeded on a yellow or warning light, the light turned red before Stegena cleared the intersection. Prior to the collision, Stegena was looking towards Lucero and away from the Blazer. Furthermore, he had waved to a pedestrian on the street corner to the right of the Subaru just prior to the crash.

 The law is clear that the contributory negligence of a victim is not a defense in a criminal prosecution. *State v. Gordon,* 219 Kan. 643, 549 P.2d 886 (1976); *State v. Crace,* 289 N.W.2d 54 (Minn.1979); *State v. Munnell,* 344 N.W.2d 883 (Minn. Ct.App.1984). Still, the actions of the victim may be considered whenever those actions have a bearing upon the alleged conduct of the defendant. *Wren v. State,* 577 P.2d 235 (Alaska 1978); *State v. Shum-*

*way,* 137 Ariz. 585, 672 P.2d 929 (1983). The actions of the victim may be considered also in deciding the question of whether the defendant's culpable negligence was the proximate cause of the victim's injury. *Wren; State v. Woodman,* 12 Kan.App.2d 110, 735 P.2d 1102 (1987). Since these considerations with respect to the conduct or actions of a victim may be considered by the jury, the jury ought to have been so instructed.

Had the jury been instructed properly, they would have considered this testimony in assessing Buckles' alleged misconduct. In addition, had the evidence of the cocaine metabolites detected in Stegena's urine been before them, the jury could have considered its significance in resolving the crucial questions of causation.

We have held that the aggravated vehicular homicide statute requires that the death be caused by driving while under the influence of alcohol.[3] *Hodgins v. State,* 706 P.2d 655 (Wyo.1985). The fact pattern there was similar to this case, and we ruled that the death of a victim in an accident with a drunk driver does not furnish adequate grounds to support the conviction unless it has also been established, beyond a reasonable doubt, that the death, in fact, was proximately caused by the drunk driving. *Hodgins. See also Felske v. State,* 706 P.2d 257 (Wyo.1985) (holding the death of another was caused by Felske driving his vehicle while so intoxicated that he could not do so safely). Support for the rule articulated in *Hodgins* was attained from the legislative history behind the statute, which is to punish those persons who cause death by driving when they are so intoxicated that they cannot safely operate their vehicles. *Hodgins. See also State v. Taylor,* 463 So.2d 1274 (La.1985) (holding the evident purpose of the vehicular homicide statute is to curb traffic fatalities caused by the consumption of alcohol and is not aimed at persons involved in vehic-

ular fatalities whose alcohol consumption does not cause, but merely coincides, with such an accident).

The rules found in these cases then lead us to jury Instruction No. 8A. The debate is over the concept of proximate cause. Buckles urges that the definition used in this instruction disregards the possibility of any superseding, intervening causes that might break the chain of proximate causation. In making that argument, Buckles relies upon *People v. Dunhill,* 40 Colo.App. 137, 570 P.2d 1097 (1977). In the *Dunhill* case, the court held that the contributory negligence of a victim that consisted of walking on the shoulder of the road was not sufficient for acquittal absent a showing that such conduct was an independent intervening cause of her death. The other evidence showed Dunhill was the driver of a truck that collided with the victim and killed her. The record demonstrated he was driving under the influence of alcohol, and his view of pedestrians was not obstructed even though one of the headlights on his truck was not operating; that the sufficiency of the evidence, along with the absence of an independent intervening cause, resulted in the conviction being affirmed.

While *Dunhill* does not directly support Buckles' argument, we find the argument is persuasive. It is nothing more than speculation to say that the jury in this case, if it had received a different instruction relative to causation, would have found Buckles guilty as the jury found Dunhill guilty. If the evidence of the cocaine metabolites had been before the jury, however, that evidence, combined with the facts that Stegena was driving very slowly; proceeded into a controlled intersection on a yellow light that turned red; and was looking away from the approaching vehicle while waving at a friend, could have been persuasive on the element of causation. The verdict might have been an acquittal. At

---

**3.** Wyo.Stat. § 31–5–1117(a) (1982) then provided:

(a) Whoever, while driving any vehicle under the influence of either intoxicating liquor or a controlled substance, or a combination of both, to a degree which renders him incapa-

ble of safely driving a vehicle, causes the death of another person shall be guilty of aggravated homicide by vehicle, and upon conviction thereof, shall be punished by imprisonment in the penitentiary for not more than twenty (20) years.

the very least, the jury should have been given the opportunity to decide whether Stegena's conduct was an efficient, intervening cause that relieved Buckles of liability.

In *Woodman,* 735 P.2d 1102, some guidance can be found for a jury instruction on proximate cause. The *Woodman* facts are similar to the facts in this case. Woodman was driving a Ford pickup east when he and his passenger observed a GMC pickup proceeding down an exit ramp that intersected with the street on which Woodman was driving. At the point of intersection, there was a traffic light that faced the exit ramp and there were traffic overhead lights facing Woodman. Woodman and his passenger testified that the driver of the GMC pickup ran a red light and stopped in the middle of the intersection. Woodman's vehicle then collided with the GMC pickup killing the driver. Woodman's blood alcohol level shortly after the accident was 0.211%, and he was convicted of aggravated vehicular homicide and driving under the influence of alcohol. An issue on appeal was whether the instruction by the trial court on aggravated vehicular homicide was erroneous and prejudicial.

The Kansas Court of Appeals agreed with Woodman that causation was an essential element of the offense of aggravated vehicular homicide in the Kansas statute.[4] The court pointed out that an examination of earlier cases involving prosecutions for vehicular homicide established that an essential element of the offense always had been a causal connection between the conduct of the defendant in driving his automobile and the resulting death of the victim. *Woodman.* Following the trial, Woodman had specifically objected to section 3 of the court's instruction to the jury. That instruction advised the jury:

> The defendant is charged with the crime of aggravated vehicular homicide.

To establish this charge, each of the following claims must be proved.

> . . . .

> 3. That the death occurred as a result of and within one year of the incident; and. . . .

*Woodman,* 735 P.2d at 1106.

In support of Woodman's theory, he had requested that this instruction be given:

> In order to find the Defendant guilty as charged in Count I of aggravated vehicular homicide, the State must establish that the decedent died within one (1) year from the 8th day of May, 1985, and that the death was the proximate result of the operation of the vehicle by the Defendant while under the influence of alcohol.

> The "proximate cause" or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence or result of the wrongful act.

*Woodman,* 735 P.2d at 1107.

The Kansas court agreed with Woodman that the instruction he had offered more clearly reflected its conclusion that the death of the victim must be the result of the defendant's driving while under the influence of alcohol.

Certainly, it would have been better for Buckles' attorney to offer such an instruction or at least an objection to Instruction No. 8A. However, under the criteria outlined in the *Hampton* case, we hold that both Instruction Nos. 8 and 8A manifest plain error. The record clearly reflects what occurred at trial without resort to speculation. We hold that the trial court violated clear and unequivocal rules of law when it failed to inform the jury it could consider Stegena's negligence for its bearing upon Buckles' conduct and upon

---

**4.** Kan.Stat.Ann. § 21–3405a (1986 Supp.) then provided:

> (1) Aggravated vehicular homicide is the unintentional killing of a human being, without malice, which is done while committing a violation of K.S.A. 8–1566, 8–1567 or 8–1568, and amendments thereto, or the ordinance of

a city which prohibits any of the acts prohibited by those statutes.

> (2) This section shall be applicable only when the death of the injured person ensues within one year as a proximate result of the operation of a vehicle in the manner described in subsection (1).

whether Buckles' conduct was the proximate cause of Stegena's death, and when this jury was given an incomplete definition of proximate cause. These violations precluded the jury from giving proper consideration to evidence which could have resulted in an acquittal. Such a violation denies Buckles, or defendants similarly situated, the right to a fair trial by a jury in violation of U.S. Const. amend. VI and amend. XIV and Wyo. Const. Art. 1, § 10.

■■■ We affirm the ruling of the trial court that admitted the result of Buckles' blood alcohol test into evidence. Sufficient probable cause existed to take the blood sample and to test it. It follows that the blood alcohol test result was properly admitted into evidence at trial. In *Van Order v. State*, 600 P.2d 1056 (Wyo.1979), we adopted the three-part test articulated by the Supreme Court of the United States, in *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), for the admissibility of results of a blood alcohol test in a negligent homicide case. Under the *Cupp* criteria adopted by *Van Order*, 600 P.2d at 1059, " 'a warrantless body search may be conducted in spite of the fact that the person searched is not formally under arrest, when (1) the character of the search is highly unintrusive, (2) the evidence sought would be forever lost absent the search, and (3) sufficient probable cause exists to support a formal arrest.' " The

*Van Order* test may be invoked in vehicular homicide cases as well as in negligent homicide cases. The record demonstrates that Buckles was taken to the hospital where a blood alcohol sample was drawn. The evidence of the alcohol level in Buckles' blood would have been forever lost absent the search, and the officer did have sufficient probable cause to justify a formal arrest. That officer, who investigated the accident and also accompanied Buckles to the hospital, testified that he had detected an odor of intoxicants at the scene, that Buckles' speech was slightly slurred, and Buckles was somewhat off balance. These observations by the officer, together with the coroner's report that Stegena was dead, furnish more than sufficient probable cause to invoke the *Van Order* test.

Because of the reversal on other issues, we need not, and do not, consider the issues of sufficiency of the evidence or the adequacy of the record for review on appeal. The judgment and sentence is reversed, and the case is remanded for a new trial in accordance with this opinion.