2009 WY 91

**Randall BRITTON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–08–0179.**

Supreme Court of Wyoming.

July 15, 2009.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Kirk Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Cathleen D. Parker, Senior Assistant Attorney General. Argument by Ms. Parker.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Randall Britton was convicted of involuntary manslaughter for the suffocation death of his girlfriend's infant daughter. Before trial, the district court ruled that evidence of bruising on the child's body would not be admissible. At trial, however, a medical report that included references to bruising was admitted into evidence without objection. On appeal, Mr. Britton challenges the admission of this information into evidence. We conclude that it was harmless error, and affirm Mr. Britton's conviction.

[¶ 2] Mr. Britton also challenges a provision of his written sentence ordering him to pay public defender fees. Mr. Britton contends that this provision is invalid because it is contrary to the district court's oral ruling. The State concedes this issue, and we re-

mand for correction of Mr. Britton's sentence.

## ISSUES

[¶ 3] Mr. Britton raises these two issues:

1. Did the district court err when it allowed into evidence a State exhibit which contained numerous references to information that the court had previously ruled inadmissible under W.R.E. 404(b)?

2. Is Appellant's sentence illegal because the trial court imposed fees for his public defender's representation in the written Judgment and Sentence, contrary to the trial court's previous finding at sentencing that he did not have the ability to pay these fees?

The issues listed by the State add some helpful details:

A. Did the district court commit reversible error in permitting the introduction of State's Exhibit 10 that contained references to bruising on the victim's buttocks?

B. Did the district court impose an erroneous sentence by awarding public defender's fees in its written Judgment and Sentence?

## FACTS

[¶ 4] Mr. Britton was employed as a long-haul truck driver. In 2007, he met Nichole Waters. Soon after their meeting, Ms. Waters and her daughter went "on the road" with Mr. Britton in his truck.

[¶ 5] On May 11, 2007, Ms. Waters and her eleven-month-old daughter were with Mr. Britton as he drove the truck west on Interstate 80 through southern Wyoming. The child was "fussy" that day because she was teething and congested, but she quieted when Ms. Waters gave her some cough medication. They stopped in Rock Springs to deliver a load, and then went to a local truck stop for something to eat. As they left the truck stop, the child became fussy again. Mr. Britton gave her a bottle, and wrapped her tightly in a blanket—"like a burrito," in his words—so that only the top of her head and her feet were visible. He then placed her on her stomach on the floor of the sleeper compartment.

[¶ 6] When they stopped at a truck stop in Evanston, Mr. Britton noticed that the child's feet appeared blue. He checked the child and found that she was not breathing. As he attempted to resuscitate the child, Ms. Waters called 911, and an ambulance and a police vehicle soon arrived. Emergency response personnel continued resuscitation efforts as they took the child to the emergency room, but after a few minutes at the hospital she was pronounced dead.

[¶ 7] An autopsy revealed no apparent cause of death, and the doctor initially offered the conclusion that the child's death was "in the category of the Sudden Infant Death Syndrome." Later, however, the doctor received information from the police department that the child "had been intentionally wrapped in a blanket for the purpose of stopping her crying, and a short time later was found blue [and] not breathing." Based on this additional information, the doctor provided a "revised opinion" that the cause of death was "asphyxia, due to suffocation," and that the "manner of death is homicide."

[¶ 8] Mr. Britton was charged with one count of involuntary manslaughter in violation of Wyo. Stat. Ann. § 6–2–105 (LexisNexis 2007).[1] He entered a plea of not guilty, and trial was scheduled for May 19, 2008. The district court's scheduling order required the State to provide notice of any evidence of uncharged misconduct that would be introduced under W.R.E. 404(b). The State provided no such notice, apparently believing that none of the evidence it planned to introduce fell under W.R.E. 404(b). Approximately a month before trial, the State provided a list of witnesses and exhibits it intended to use at trial, including photo-

graphs of the child, a recorded interview in which Mr. Britton admitted that he had spanked the child, testimony from a police officer who had heard Mr. Britton's interview, and testimony from another officer who had observed bruising on the child's body.

[¶ 9] Because some of the hearings on evidentiary issues were apparently informal, and not reported, the record is vague on many details of the pretrial proceedings in this case. The record establishes, however, that the district court indicated prior to trial that evidence concerning spanking or bruising would probably be inadmissible, and instructed counsel not to refer to such information during opening statements. In a hearing soon after the trial began, the district court again considered issues concerning W.R.E. 404(b) evidence. The parties agreed that two of the State's photographs could be admitted into evidence, and the State agreed not to offer other photographs showing bruising on the child's body. The State also apparently agreed not to offer any evidence concerning Mr. Britton's spanking of the child.

[¶ 10] At trial, the State offered into evidence Exhibit 10, the child's medical records from the Evanston hospital. Among twenty-four pages of detailed notes and medical information are five references to the child's bruises, made by different emergency room personnel soon after the child was declared dead.[2] Mr. Britton did not object to Exhibit 10, and the district court admitted it into evidence.

[¶ 11] On May 21, 2008, the jury returned a verdict of guilty on the charge of involun-

---

1. In pertinent part, Wyo. Stat. Ann. § 6–2–105 provides that "(a) A person is guilty of manslaughter if he unlawfully kills any human being without malice, expressed or implied ... (ii) Involuntarily, but recklessly .... (b) Manslaughter is a felony punishable by imprisonment in the penitentiary for not more than twenty (20) years."

2. For the sake of completeness, we will quote the five references here. We note, however, that the impact of these references seems greater when they are collected and highlighted in a single footnote than when they are scattered through twenty-four pages of other notes and medical information. On page 6, of Exhibit 10, is a

nurse's handwritten notation of "bruises in various stages of healing noted over both buttocks." On page 7, in the same nurse's handwriting, is an indication that "bruises were noted all over buttocks." On page 15, notes from a person on the "case management team" indicated "bruising all over buttocks." On page 16, notes from the attending physician include the comment, "Bruises on buttocks in 3 radiating lines sugg[estive] of finger marks." On page 17, apparently also notes from the attending physician, there is a check mark next to the text "no evidence of trauma," followed by the handwritten comment "later found bruises on buttocks."

tary manslaughter. On May 23, 2008, the district court wrote a letter to counsel observing that "Exhibit 10 (the Evanston hospital report) contained a reference to the bruising on the child's buttocks." After reviewing its pretrial rulings on such evidence, the district court wrote that "this was inadvertent," but the "evidence was, nevertheless, submitted to the jury in violation of my order." The district court took no further action, stating that it had "brought this to [counsels'] attention so that each of you may reflect on what, if anything, can or should be done." Mr. Britton did not move for a new trial or seek other relief from the district court. After the district court entered judgment and sentenced Mr. Britton to two to six years in prison, Mr. Britton filed this appeal.

## STANDARD OF REVIEW

[¶ 12] The parties disagree on the appropriate standard of review. Mr. Britton did not object to the introduction of Exhibit 10 at trial. On that basis, the State asserts that the plain error standard of review should apply, citing *Dettloff v. State*, 2007 WY 29, ¶ 34, 152 P.3d 376, 385 (Wyo.2007), among other cases.

[¶ 13] Mr. Britton points out that, in previous cases, we have established that a defendant's pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b) may serve as an objection to the introduction of such evidence. *Howard v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo.2002). Although Mr. Britton did not file a demand, the district court issued a scheduling order that required the State to provide notice of any proposed W.R.E. 404(b) evidence. Mr. Britton contends that the court's order served the same purpose as a defendant's request for notice, and so also preserved his objection to the admission of evidence under W.R.E. 404(b). On that basis, Mr. Britton urges us to review for abuse of discretion, citing *John-*

son *v. State*, 936 P.2d 458, 462 (Wyo.1997), among other cases.

[¶ 14] It is unnecessary for us to choose between the two standards of review, because the result is the same under either standard. The district court's letter, written soon after trial, stated that the admission of Exhibit 10 violated the order excluding such evidence. Without deciding this issue, we accept the district court's conclusion that Exhibit 10 was admitted into evidence in error. We will consider that error sufficient, for purposes of this case, to establish an abuse of discretion under the standard of review advocated by Mr. Britton. *See Johnson*, 936 P.2d at 462. We will also treat that error as sufficient, in this case, to establish an error clearly demonstrated in the record, and the violation of a clear and unequivocal rule of law, satisfying the first two requirements of the plain error standard advocated by the State. *See Guy v. State*, 2008 WY 56, ¶ 9, 184 P.3d 687, 692 (Wyo.2008).

[¶ 15] Under both standards of review, the next step is to consider whether the error was prejudicial or harmless. The test is the same under either standard: we will reverse if there is a reasonable possibility that the verdict would have been more favorable to the Appellant if the error had not been made.[3] The dispositive question in this case, then, is whether the admission into evidence of Exhibit 10, with its references to bruising, resulted in material prejudice to Mr. Britton.

## DISCUSSION

[¶ 16] To determine whether the introduction of Exhibit 10 resulted in material prejudice, we begin by reviewing the sort of unfairly prejudicial evidence that is inadmissible under W.R.E. 404(b). That rule provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of

---

3. Under the abuse of discretion standard, we have said that "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." *Reay v. State*, 2008 WY 13, ¶ 8, 176 P.3d 647, 650 (Wyo.2008). In cases applying the plain error standard, we have written that error is prejudicial when "a reasonable

probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict." *Guy*, ¶ 9, 184 P.3d at 692. This analysis is also consistent with W.R.A.P. 9.04, which provides that "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court."

a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have explained that this rule reflects the principle "that the defendant in a criminal case 'should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged.'" *Leyva v. State*, 2007 WY 136, ¶ 19, 165 P.3d 446, 452 (Wyo. 2007) (*quoting* 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:21, at 691–92 (3d ed. 2007)).

[¶ 17] In his brief, Mr. Britton posits that the jury may have convicted him, not because of his guilt on the charge of involuntary manslaughter, but because it was angered by other suggestions of child abuse. As he contends:

> This case concerns the death of a very young child. Evidence o[f] the previous injuries to that child, which are interpreted as abuse, is by nature some of the most prejudicial evidence possible. The court initially had numerous jurors express concerns about serving on this type of case and a propensity to want to vindicate the child. As the trial court noted: "we had jurors coming in here, talking about their concern about the effect on them and everything else. These are difficult cases." ... The significance of evidence of previous abuse cannot be underscored.

[¶ 18] Mr. Britton's argument depends on this chain of reasoning: (1) the jury focused on Exhibit 10's references to bruising; (2) it interpreted the bruising as evidence of child abuse; (3) it presumed that Mr. Britton had abused the child; and (4) it voted to punish Mr. Britton because of his past misdeeds. Upon examination, this chain of reasoning has too many weak links to demonstrate that the admission of Exhibit 10 worked any material prejudice against Mr. Britton.

[¶ 19] Exhibit 10 consists of twenty-four pages of medical notes, within which are five references to bruises on the child's body. These references are surrounded by other notes and medical information. The first

reference is fairly typical. On a full page of handwritten lines of medical information, the notation "bruises in various stages of healing noted over both buttocks" appears on lines sixteen and seventeen. The notation is not underlined, capitalized, or highlighted in any way. During the trial, neither party referred to this comment, or to any of Exhibit 10's notations on bruising.

[¶ 20] Indeed, the events at trial demonstrate that neither party noticed Exhibit 10's references to bruising. Defense counsel did not object when Exhibit 10 was offered into evidence. The prosecution did not redact the references to bruises, as it had done with at least one other trial exhibit. Even the district court did not notice the references to bruising until after the trial. We may presume that the jury considered all of the evidence presented. Still, there is no reason to believe that the jury focused unduly on these scattered references to bruises. The first link in Mr. Britton's chain of reasoning—that the jury read and relied on Exhibit 10's references to bruising—may be plausible, but it is not compelling.

[¶ 21] The second link in Mr. Britton's chain—that the jury interpreted the bruises as evidence of child abuse—is also possible but unconvincing. There was no evidence put to the jury that the bruises were the result of spanking or child abuse. The only mention of bruising during the trial was when Mr. Britton's defense counsel, in his opening statement, told the jury that Mr. Britton had wrapped the child in a blanket "and instead of setting her on the sleeper bed where she had fallen off before—the evidence will be that she bruised her forehead from falling off that—he set her on the floor." No witness ever testified that the bruises were caused by human hands. Exhibit 10 contained no explanation of the cause of the bruising, only the cryptic notation on page 16 of bruises "in 3 radiating lines sugg[estive] of finger marks." This vague suggestion is inadequate to make it reasonably probable that the jury interpreted the bruises as evidence of child abuse.

[¶ 22] The third link in Mr. Britton's chain—that the jury presumed it was Mr.

Britton who abused the child—is the weakest. The parties knew that Mr. Britton, in a police interview, admitted that he had spanked the child. The jury did not know that. The recording of Mr. Britton's interview was never played for the jury. No witnesses referred to this admission by Mr. Britton. The State assured the district court at least twice during trial that its witnesses had been instructed to avoid any mention of Mr. Britton spanking the child. The witnesses complied with that instruction, and as a result, there was no evidence presented to the jury that Mr. Britton had ever spanked the child. Given the lack of any evidence connecting Mr. Britton and the child's bruises, it seems unlikely that the jury would have been distracted by unsupported speculation that Mr. Britton had previously abused the child.

[¶ 23] The fourth link in Mr. Britton's chain—that the jury decided to punish Mr. Britton based on speculation that he had abused the child in the past—therefore seems improbable. The jury had before it compelling evidence that Mr. Britton had committed the criminal acts for which he was charged. It was undisputed that Mr. Britton had wrapped the child tightly in a blanket, placed her on her stomach on the floor of the sleeper compartment, and left her there for nearly two hours. The blanket was large and fairly heavy, and when wrapped around the child, it covered her face with two or three layers. The doctor who performed the autopsy concluded that the cause of death was "asphyxia, due to suffocation," and Mr. Britton told the police that he assumed the child had suffocated. Mr. Britton initially told Ms. Waters not to mention that he had wrapped the child in a blanket. Later, he admitted to the police that he had wrapped her up, and acknowledged that she would still be alive if he had not done that. In addition, he acknowledged that he was aware of the danger that wrapping a baby's head in a blanket could result in suffocation. Even this brief summary of the evidence against Mr. Britton indicates that the jury was presented with ample evidence that he had involuntarily but recklessly caused the death of the child, and confirms our conclusion that there is no reasonable probability that the jury might have returned a verdict more favorable to Mr. Britton even if Exhibit 10 had not been admitted into evidence.

[¶ 24] As his second issue, Mr. Britton challenges the provision of his sentence requiring him to pay public defender fees. During Mr. Britton's sentencing hearing, the district court clearly and expressly stated that Mr. Britton lacked the ability to pay those fees, and would not be ordered to do so. The written judgment and sentence, however, provides that Mr. Britton "shall reimburse the Public Defender's Office for fees incurred in this case." As a general rule, an unambiguous oral pronouncement prevails over a contrary provision in a written order. *Sampsell v. State*, 2001 WY 12, ¶ 5, 17 P.3d 724, 725 (Wyo.2001). The State concedes that the district court's oral pronouncement should control, and that Mr. Britton's written judgment and sentence should be corrected. We therefore remand this case to the district court for the limited purpose of correcting the written judgment and sentence to conform to the oral ruling that Mr. Britton is not required to pay public defender fees. The case is affirmed in all other respects.