# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 129

OCTOBER TERM, A.D. 2019

December 20, 2019

CHRISTOPHER MARK NESIUS,

Appellant
(Defendant),

v.

S-19-0069

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Crook County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*
Office of the Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Desiree Wilson, Senior Assistant Appellate Counsel. Argument by Ms. Wilson.

*Representing Appellee:*
Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, Prosecution Assistance Program; Mackenzie Morrison, Student Director. Argument by Ms. Morrison.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN**, Justice.

[¶1]    A jury convicted Christopher Mark Nesius of two felonies and three misdemeanors after he led law enforcement officers on a high-speed pursuit that ended when he struck and seriously injured a motorcyclist on I-90 near Sundance, Wyoming.  On appeal, Mr. Nesius challenges the sufficiency of the evidence to support his conviction for driving under the influence (DUI) causing serious bodily injury under Wyoming Statute § 31-5-233(b)(iii)(B).  He argues that his sentence for fleeing or attempting to elude police officers under Wyoming Statute § 31-5-225(a) is illegal because it exceeds the statutory maximum.  And he contends that the district court's written sentence failed to conform to its oral pronouncement with respect to credit for time served.  We affirm Mr. Nesius' conviction for DUI causing serious bodily injury, but remand for issuance of a corrected sentencing order.

## *ISSUES*

[¶2]    Mr. Nesius raises two issues on appeal, which we rephrase:

I.    Was the evidence sufficient for the jury to convict Mr. Nesius of DUI causing serious bodily injury under Wyoming Statute § 31-5-233(b)(iii)(B)?

II.   Is Mr. Nesius' 211-day sentence on Count V, fleeing or attempting to elude police officers under Wyoming Statute § 31-5-225(a), illegal because it exceeds the statutory maximum, and did the district court's written sentence fail to conform to its oral pronouncement with respect to credit for time served?

## *FACTS*

[¶3]    Given the issues on appeal, we address the facts in the context of the trial proceedings.  On July 10, 2017, the State charged Mr. Nesius with six crimes: aggravated assault and battery (Count I); DUI causing serious bodily injury, second offense (Count II); reckless endangering (Count III); interference with a peace officer (Count IV); fleeing or attempting to elude police officers (Count V); and driving with a cancelled, suspended, or revoked license, second offense (Count VI).

[¶4]    In October 2018, the district court held a two-day trial on these charges.  The State presented the testimony of the law enforcement officers who were involved in the pursuit, a paramedic, two scientific witnesses, and the motorcyclist.  The State's first witness, Wyoming State Park Ranger Brad Purcell, outlined how the incident began at Keyhole State Park on July 8, 2017.  The driver of a maroon Ford truck, later identified as Mr.

1

Nesius, passed Ranger Purcell at a high rate of speed. Ranger Purcell determined that Mr. Nesius was driving 63 miles per hour in a 30-mile-an-hour zone. He activated the emergency lights on his vehicle and pursued the truck. Ranger Purcell observed Mr. Nesius drive "really close to the fee booth" and then proceed to McKean Road. Mr. Nesius stopped at the intersection of Pine Ridge Road due to cross-traffic and Ranger Purcell exited his vehicle to conduct a traffic stop, at which time Mr. Nesius spontaneously put both of his hands out of the truck window. As Ranger Purcell approached, Mr. Nesius' hands disappeared back into the truck and he sped off, leaving a "rooster tail full of gravel and dust" in his wake.

[¶5]    Ranger Purcell returned to his vehicle and pursued Mr. Nesius south on Pine Ridge Road, where he observed Mr. Nesius cross a cattle guard at a high rate of speed and temporarily lose back-end traction before proceeding to another intersection where—in a now familiar ruse—Mr. Nesius stopped his truck in the middle of the road and spontaneously put his hands out the window. As Ranger Purcell began to open his door, Mr. Nesius sped off again. Mr. Nesius proceeded onto I-90 east towards Sundance, and additional officers joined the pursuit.

[¶6]    Wyoming Highway Patrol Trooper Jared Williams, Crook County Sheriff Jeff Hodge, and Crook County Sheriff's Deputy Jason Robinson each testified about their involvement in the highway pursuit. Their testimony reflected that Mr. Nesius did not maintain a single lane. Sheriff Hodge testified that Mr. Nesius "cross[ed] over the fog line" numerous times, "cross[ed] over the centerline," drove "a little ways down through the centerline," and "passed a vehicle on the right shoulder of the road." Mr. Nesius was "pretty consistent, . . . just swerving over the centerline, fog line." Trooper Williams added that Mr. Nesius did not fail to maintain a lane just once, he did so "for a few miles." The officers also testified that Mr. Nesius did not maintain one speed on the highway. Sheriff Hodge stated that Mr. Nesius drove "73, 74, 100, 103, back down to 80-some miles an hour," and characterized his speed as "pretty sporadic." Deputy Robinson noted that Mr. Nesius' "vehicle speeds fluctuated from in the low 70s to in excess of a hundred miles an hour."

[¶7]    The State's evidence reflected that officers unsuccessfully attempted to stop Mr. Nesius with spike strips. The pursuit continued until Mr. Nesius clipped the back end of a motorcycle with the front of his truck, causing both his truck and the motorcycle to lose control and leave the highway. It appeared to Sheriff Hodge that Mr. Nesius "was trying to pass the motorcycle and just was not able to successfully negotiate that pass." While some officers attended to the motorcyclist and called for emergency assistance, Trooper Williams and Sheriff Hodge approached the truck to arrest Mr. Nesius.

[¶8]    When Trooper Williams and Sheriff Hodge initially contacted Mr. Nesius, he asked them questions such as "[W]hat happened?" "Am I dead?" and "Am I alive?" On cross-examination about those questions, Sheriff Hodge agreed with defense counsel that he had

2

observed accidents before and those were "fairly standard kind of questions people ask when you pull them out of a car." They were not unusual. When asked whether those were questions "that someone would ask who's aware of their surroundings," Sheriff Hodge responded, "[s]omewhat, or unaware of their surroundings." When asked to "modify" his answer, Sheriff Hodge clarified his testimony: "I mean, if you're asking for my judgment on what I've seen in the past, then I have dealt with people who have be[en] under highly influence of drugs that thought they were dead. Normally -- on a normal basis, normal person is not going to ask you if they're dead."

[¶9] Mr. Nesius refused to exit his truck when officers ordered him to do so. As a result, Sheriff Hodge and Trooper Williams had to "drag him out . . . and wrestle with him on the ground" to handcuff him. Sheriff Hodge characterized Mr. Nesius as being "[a]bnormally strong." Trooper Williams added that Mr. Nesius pulled away from them, screamed, and fought with them while they tried to gain control of his hands. After they handcuffed him, Mr. Nesius refused to provide his name. Consequently, Trooper Williams searched Mr. Nesius' truck for identification and found a glass pipe in the overhead console. A paramedic collected Mr. Nesius' blood at the scene.

[¶10] A forensic chemist from the Wyoming State Crime Laboratory testified that she identified the presence of methamphetamine on the glass pipe. Michael Cornell, a forensic toxicologist for the chemical testing program at the Wyoming Department of Health, testified that Mr. Nesius' blood test results confirmed "the presence of amphetamine at 14.7 nanograms per milliliter [of blood], and . . . methamphetamine at 75.2 nanograms per milliliter." He also testified about general matters related to methamphetamine use. He thus explained that the effects of methamphetamine "usually last four to eight hours but sometimes up to 12 hours," depending on the dose. He informed the jury that methamphetamine typically results in "a feeling of euphoria and excitation, [and] increased . . . heart rate, blood pressure[.]" He explained that it results in "a high feeling"— "sometimes you'll have a feeling of not necessarily invincibility but just, you know, a strong, like, personality and potentially even almost to the point of aggressiveness just to where you feel like you can take on the world." He relayed that methamphetamine can typically be detected in the blood "anywhere from short duration, you know, immediately if it might -- in IV type of use, typically, to 24 to 48 hours."

[¶11] At the close of evidence, the district court granted Mr. Nesius' motion for judgment of acquittal on Count VI, driving with a cancelled, suspended, or revoked license. The jury convicted him of the remaining five counts.

[¶12] At sentencing, the district court determined that Mr. Nesius was entitled to 211 days of credit for time served and then sentenced him to concurrent sentences of 211 days, with credit for time served, on each misdemeanor. Turning to the felony counts, the court sentenced him to five to eight years on Count I. Addressing Count II and the relationship between the various counts and credit for time served, the court stated:

3

As to the sentence for the DUI with serious bodily injury, the sentence will be not less than 12 nor more than 15 years to run consecutive to the aggravated assault. The two felony charges are going to run concurrent to the misdemeanors. So there will be credit for 211 days.

The district court's subsequent written sentencing order did not mention credit for time served on either felony. Mr. Nesius timely appealed.

## DISCUSSION

### I.     The evidence was sufficient for the jury to convict Mr. Nesius of DUI causing serious bodily injury.

[¶13]   We apply our familiar sufficiency of the evidence standard of review to Mr. Nesius' challenge to his conviction.

> When we review a criminal conviction for sufficiency of the evidence, we view the facts in the light most favorable to the State. *Downs v. State*, 581 P.2d 610, 614 (Wyo. 1978). We leave out any conflicting evidence of the defendant, and draw every reasonable inference in the State's favor. *Id*. The question we must answer is whether a reasonable and rational jury could have convicted the defendant of the crime based upon the evidence that was presented at trial. *Horn v. State*, 554 P.2d 1141, 1145 (Wyo. 1976).

*Hopkins v. State*, 2019 WY 77, ¶ 14, 445 P.3d 582, 587 (Wyo. 2019) (quoting *Guy v. State*, 2008 WY 56, ¶ 37, 184 P.3d 687, 698 (Wyo. 2008)).

[¶14]   The district court instructed the jury that to find Mr. Nesius guilty of DUI causing serious bodily injury, the State had to prove the following elements beyond a reasonable doubt:

> 1. On or about the 8th day of July, 2017;
> 2. In Crook County, Wyoming;
> 3. The Defendant, Christopher Nesius;
> 4. Drove a vehicle;
> 5. While under the influence of a controlled substance;[1]

---

[1] The court instructed the jury that a "controlled substance" is "a drug, substance, or immediate precursor in Schedules I through V of Article III of the Wyoming Controlled Substances Act of 1971." It further

4

6. To a degree which rendered defendant incapable of driving safely;

7. As a result of such driving, caused serious bodily injury to another person.

Mr. Nesius challenges the sufficiency of the evidence to support the fifth and sixth elements. We limit our analysis accordingly.

### A. While under the influence of a controlled substance

[¶15] As the preceding jury instruction suggests, "there is no prescribed concentration in the system with respect to controlled substances, nor is there any presumption attaching to specified quantities." *Buckles v. State*, 830 P.2d 702, 706 (Wyo. 1992). As a result, "[t]he sole question is whether the person is incapable of driving safely because he is under the influence of a controlled substance." *Id.*

[¶16] The State presented ample evidence from which the jury could reasonably infer that Mr. Nesius drove a vehicle while under the influence of a controlled substance. Mr. Nesius' blood tested positive for methamphetamine. Trooper Williams found a pipe in Mr. Nesius' truck which tested positive for the presence of methamphetamine residue. Viewing Sheriff Hodge's testimony in the light most favorable to the State, *Hopkins*, ¶ 14, 445 P.3d at 587, the jury could reasonably conclude that Mr. Nesius asked officers "Am I dead?" because he was under the influence of drugs, not because he had just been in a car accident. Finally, the jury could compare Mr. Cornell's testimony about the typical effects of methamphetamine with Mr. Nesius' behavior. From that comparison, it could reasonably conclude that he was under the influence because he exhibited "aggressiveness" and a "take on the world" attitude in his interactions with law enforcement officers. Contrary to Mr. Nesius' assertion, the State did not have to present testimony from a drug recognition expert to confirm that he exhibited indicia of being under the influence. The jury could draw that inference on its own.

### B. To a degree which rendered defendant incapable of driving safely

[¶17] "Proof of unsafe driving . . . is competent evidence to be considered with all of the other evidence in determining whether the driver is under the influence of intoxicating liquor to a degree that he is incapable of safely driving." *Nowack v. State*, 774 P.2d 561, 570 n.13 (Wyo. 1989). We see no reason to distinguish cases involving controlled substances when considering evidence of unsafe driving.

---

instructed the jury that "'Methamphetamine' is a controlled substance listed in Schedule II of the Wyoming Controlled Substances Act of 1971."

[¶18] The State presented sufficient evidence from which the jury could reasonably infer not only that Mr. Nesius was under the influence of methamphetamine, but also that he was under the influence of that controlled substance to a degree which rendered him incapable of driving safely. From Mr. Nesius' unsafe driving, the jury could reasonably infer that his reaction times, and his ability to appropriately gauge speed and distance, were compromised by methamphetamine. Mr. Nesius did not just drive more than double the speed limit through Keyhole State Park, he almost struck a fee booth as he passed it. On the highway, he consistently failed to maintain a lane and drove far in excess of the speed. Mr. Nesius failed to negotiate a pass around a motorcycle, clipping the back of it with the front of his truck. When the evidence is viewed as a whole and in the light most favorable to the State, we have little trouble concluding that the evidence was sufficient for the jury to draw the necessary connection between Mr. Nesius' intoxication and driving capability. Contrary to Mr. Nesius' assertion, the State did not have to present an expert to confirm that 75.2 nanograms of methamphetamine per milliliter of blood is a sufficient concentration to affect a person's mental or physical processes, behavior, motor function, or emotions. And the whole of the State's evidence did more than, as Mr. Nesius suggests, simply show that he had methamphetamine and methamphetamine metabolites in his system at the time of the crash and that methamphetamine, in general, causes euphoria, excitation, increased heart rate and blood pressure, a feeling of invincibility, and aggressiveness.

## II. *Mr. Nesius' sentence for fleeing or attempting to elude police officers is illegal, and the district court's written sentence failed to clearly conform to its oral pronouncement and the law with respect to credit for time served.*

[¶19] Applying a de novo standard of review, *Candelario v. State*, 2016 WY 75, ¶ 5, 375 P.3d 1117, 1118 (Wyo. 2016), we agree with the parties that Mr. Nesius' sentence for fleeing or attempting to elude police officers under Wyoming Statute § 31-5-225(a) (Count V) is illegal because it exceeds the statutory maximum. We further conclude that the district court's written sentence failed to conform to its oral pronouncement with respect to credit for time served. Mr. Nesius is entitled to 211 days of credit for time served on felony Count I, but not felony Count II. He should nevertheless receive credit for time served on Count II if the district court in its discretion intended to grant him such credit at the time of sentencing.

### A. Sentence for fleeing or attempting to elude police officers

[¶20] A sentence that exceeds the statutory maximum is illegal. *Gould v. State*, 2006 WY 157, ¶ 9, 151 P.3d 261, 265 (Wyo. 2006). The applicable statute determines the statutory maximum. *See Brown v. State*, 2004 WY 119, ¶ 7, 99 P.3d 489, 491 (Wyo. 2004). The statutory maximum for fleeing or attempting to elude police officers is "a fine of not more than seven hundred fifty dollars ($750.00), . . . imprisonment for not more than six (6) months, or both." Wyo. Stat. Ann. § 31-5-225(b) (LexisNexis 2019). Mr. Nesius' 211-

6

day sentence on Count V clearly exceeds the statutory maximum of six months by, at most, 31 days, and is therefore illegal. *Gould*, ¶ 9, 151 P.3d at 265.

[¶21] "When a district court exceeds its sentencing authority and the sentence is divisible," we may remand for resentencing or simply mandate that the illegal portion be stricken. *Smith v. State*, 2012 WY 130, ¶ 16, 286 P.3d 429, 434 (Wyo. 2012) (quoting *Crosby v. State*, 2011 WY 44, ¶ 8, 247 P.3d 876, 878 (Wyo. 2011)). We generally remand for resentencing where it seems likely that the "court may have imposed a different sentence had it known that part of the sentence was illegal," and we strike the illegal portion of a sentence when it seems unlikely "that the legal part of the sentence would change." *Id.* (citations omitted). We are convinced that if the district court had known that Mr. Nesius' 211-day sentence on Count V was illegal, it would have sentenced him to the maximum term of six months for that offense. We therefore mandate that the illegal portion of Mr. Nesius' sentence be stricken and that he be sentenced to six months on Count V, with credit for time served.

### B. Credit for time served

[¶22] This appeal implicates various rules related to credit for time served and sentencing orders. "A defendant is entitled to credit for the defendant's 'time spent in presentence confinement, against both the minimum and maximum sentence, if the defendant was unable to post bond for the offense of which he was convicted.'" *Mitchell v. State*, 2018 WY 110, ¶ 33, 426 P.3d 830, 839 (Wyo. 2018) (quoting *Rosalez v. State*, 955 P.2d 899, 900 (Wyo. 1998) (citations omitted)). The written sentence must "[s]tate the extent to which credit for presentence confinement is to be given for each sentenced offense" and be consistent with the oral pronouncement of sentence. W.R.Cr.P. 32(c)(2)(F) (LexisNexis 2019); *Palomo v. State*, 2018 WY 42, ¶ 26, 415 P.3d 700, 706 (Wyo. 2018). An unambiguous oral sentence prevails over a contrary provision found in a written sentence. *See Washington v. State*, 2019 WY 22, ¶ 3, 435 P.3d 366, 367 (Wyo. 2019); *see also Britton v. State*, 2009 WY 91, ¶ 24, 211 P.3d 514, 519 (Wyo. 2009).

[¶23] When the district court pronounced Mr. Nesius' sentence at the hearing, it unambiguously stated that he was entitled to 211 days of credit for time served. Seizing on the district court's statement at the hearing that "[t]he two felony charges are going to run concurrent to the misdemeanors," Mr. Nesius argues that this case involves a straightforward application of a rule we pronounced in *Scott v. State*: "credit for time served is applied against all concurrent sentences imposed in a single prosecution." 2012 WY 86, ¶ 19, 278 P.3d 747, 753 (Wyo. 2012) (citing *Weedman v. State*, 792 P.2d 1388, 1389 (Wyo. 1990)). This case is not so straightforward, however, because it involves a combination of concurrent and consecutive sentences. *Scott* did not squarely address application of credit for time served in these circumstances. *See id.* ¶¶ 18–19, 278 P.3d at 753 (rejecting Mr. Scott's argument that his sentence was illegal because it was "not possible for him to serve six month misdemeanor sentences concurrently with three consecutive felony sentences").

7

We must also consider how credit for time served applies to Mr. Nesius' consecutive felony sentences.

[¶24]   In *Palmer v. State*, we held "that when consecutive sentences are ordered, the proper allocation of credit for time served is one that gives the defendant full credit for the actual time served against his total term of imprisonment." 2016 WY 46, ¶ 14, 371 P.3d 156, 159 (Wyo. 2016).   Accordingly, credit should be allocated "to one, but not more, of a defendant's consecutive sentences."  *Id.*  In so determining, we explained:

> In the case of concurrent sentences, the period of presentence confinement should be credited against each sentence.  This is so because concurrent sentences obviously commence at the same time and in functional effect result in one term of imprisonment represented by the longest of the concurrent sentences imposed.   Only by giving credit against each concurrent sentence will the defendant be assured of receiving credit for the full period of presentence confinement against the total term of imprisonment.  ***When consecutive sentences are imposed, crediting the period of presentence confinement against one of the sentences will assure the defendant full credit against the total term of imprisonment.***

*Id.* (emphasis in original) (quoting *Schubert v. People*, 698 P.2d 788, 795 (Colo.1985)). We therefore concluded that the district court did not err when it ordered Mr. Palmer receive "credit for any time served" at the sentencing hearing and then, in its written judgment and sentence, applied his ninety-nine days of presentence confinement to the first of his three consecutive sentences.  *Id.* ¶ 15, 371 P.3d at 159.

[¶25]   Applying *Scott* and *Palmer* here, we conclude that the court's written sentence failed to conform to its oral pronouncement with respect to credit for time served because, while the court recognized at the sentencing hearing that Mr. Nesius was entitled to 211 days of credit for time served, it did not grant him credit for time served on the Count I felony in the written sentencing order.  Mr. Nesius is entitled to 211 days of credit for time served on Count I to ensure that he receives "full credit . . . against his total term of imprisonment." *Palmer*, ¶ 14, 371 P.3d at 159; *see also Scott*, ¶ 19, 278 P.3d at 753.  Mr. Nesius is not, however, **entitled** to credit for time served on his consecutive sentence for the Count II felony, lest he receive credit for double the time he actually spent in pre-sentence confinement.  *Palmer*, ¶ 14, 371 P.3d at 159.

[¶26]   However, though we conclude that Mr. Nesius is not **entitled** to credit for time served on felony Count II, the district court had discretion to award him credit on that count if it wished to do so.  *Hutton v. State*, 2018 WY 88, ¶ 16, 422 P.3d 967, 971 n.8 (Wyo. 2018) (citing *Askin v. State*, 2016 WY 9, ¶¶ 9–11, 365 P.3d 784, 786–87 (Wyo. 2016)).

The record is not clear whether the district court intended, in its discretion, to award Mr. Nesius credit for time served on Count II. On remand for issuance of a corrected sentencing order, the district court should clarify its intent at the time of sentencing and either grant or deny credit on Count II.

## *CONCLUSION*

[¶27]  We affirm Mr. Nesius' conviction for DUI causing serious bodily; mandate that the illegal portion of his sentence on Count V, fleeing or attempting to elude police officers, be stricken; and conclude that Mr. Nesius is entitled to 211 days of credit for time served on Count I. The district court should also clarify the meaning of its oral pronouncement at sentencing as to Count II, and grant credit against that count if that was its intention, or deny if it was not. We therefore remand this case to the district court for issuance of a corrected sentencing order consistent with this opinion, and that conforms to its oral pronouncement.